**GREENBERG TRAURIG, LLP**
KARIN L. BOHMHOLDT (SBN 234929)
*bohmholdtk@gtlaw.com*
SAMIR HAKIM (SBN 345778)
*sam.hakim@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

Attorneys for Respondents and Counter-Petitioners

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN R. HYSLOP, an individual,<br><br>    Petitioner,<br><br>v.<br><br>MORGAN STANLEY SMITH BARNEY LLC and MORGAN STANLEY SMITH BARNEY FINANCING LLC,<br><br>    Respondents. | CASE NO.  3:23-CV-00743-L-KSC<br><br>**ANSWER AND COUNTER-PETITION TO CONFIRM ARBITRATION AWARD ISSUED MARCH 9, 2023**<br><br>Action Filed:    April 10, 2023<br>Action Removed:  April 21, 2023<br><br>COURTROOM 5B<br>Hon. Judge M. James Lorenz |
| MORGAN STANLEY SMITH BARNEY LLC and MORGAN STANLEY SMITH BARNEY FINANCING LLC,<br><br>    Counter-Petitioners,<br><br>v.<br><br>RYAN R. HYSLOP, an individual,<br><br>    Counter-Respondent. | |

## MORGAN STANLEY SMITH BARNEY LLC'S AND
## MORGAN STANLEY SMITH BARNEY FINANCING LLC'S
## ANSWER TO PETITION

Respondents Morgan Stanley Smith Barney LLC ("MSSB") and Morgan Stanley Smith Barney Financing LLC ("MSSB Financing" or collectively with MSSB, the "Respondents") hereby answer the Petition to Vacate Arbitration Award ("Petition") of Ryan R. Hyslop ("Hyslop," or "Petitioner") as follows.[1]  The Petition is filed on a California state court form petition.  Accordingly, Respondents respond to the allegations with paragraph numbers that correspond to the numbers in the form Petition.

1.    Paragraph 1 of the Petition simply names the parties to this dispute, so no admission or denial is required.  To the extent an admission or denial is required, Respondents admit that the Petitioner's name is Ryan R. Hyslop and Respondents are MSSB and MSSB Financing.

2.    Respondents admit that Hyslop has filed the Petition to vacate an award in an arbitration conducted according to an agreement between the parties that is subject to Code of Civil Procedure section 1285 *et seq.*[2]

3.    Respondents admit that MSSB is a Delaware limited liability company, and that MSSB Financing is a Delaware limited liability company.  Respondents further admit that Petitioner seeks to vacate the Arbitration Award of $814,385.37, plus interest. Respondents further admit that venue was proper in the California Superior Court for the County of San Diego because that is the court in the county in which the underlying FINRA arbitration ("Arbitration") was held.

---

[1] Respondents reserve their right and intend to bring a separate Motion to Confirm the Arbitration Award.  Moreover, Respondents file this Answer without prejudice to their right to file a response to any memorandum of points and authorities in support of the Petition which Petitioner may file prospectively.

[2] Respondents further respond and allege that they properly have removed this case to this Court from state court because diversity of citizenship exists, the arbitration took place in San Diego, and the amount in controversy is satisfied as stated in the Notice of Removal and Cross-Petition below.

ANSWER AND COUNTER-PETITION TO CONFIRM ARBITRATION AWARD

4.      Respondents admit that they entered into written agreements to arbitrate on the following dates: November 26, 2013; December 30, 2013; January 2, 2014; January 27, 2016; January 17, 2017; January 26, 2018; February 1, 2019; and February 15, 2019.

5.      Respondents admit that the Arbitration giving rise to this proceeding involved the enforcement of promissory notes.  Respondents deny that they sought to enforce illegal promissory notes.  Respondents further deny that they sought FINRA forum fees in violation of California law.  Except as expressly admitted, the remainder of any factual allegations stated in Paragraph 5 are denied.

6.      Admitted.

7.      Admitted.

8.      Respondents admit that the Arbitration Award was executed by Arbitrator Charles Chia-Lin Hsieh ("Arbitrator") on March 9, 2023.  Respondents further admit that the Arbitration Award requires Petitioner to pay Respondents in the amount of $814,385.37, plus interest of $120.86 per day after January 18, 2023 until the Arbitration Award is paid.  The Arbitration Award also required Petitioner to pay a portion of the forum fees.  However, Respondents deny that the hearing forum fees are in violation of California law.  Respondents admit that a true and correct copy of the Arbitration Award was submitted with the Petition as Attachment 8(c). Except as so admitted, denied.

9.      Denied.  The Arbitration Award states it was served on March 10, 2023.

10.     Paragraph 10 of the form Petition does not state facts, so no factual admission or denial is required, but to the extent one is required, Respondents deny all allegations of Paragraph 10.  For the avoidance of doubt, Respondents deny that there is any basis to vacate the Arbitration Award.  Respondents deny that the Arbitration Award was obtained by corruption, fraud, or other unfair means.  Respondents further deny that the Arbitrator exceeded his authority and that the Arbitration Award cannot be fairly corrected.  Respondents further deny that the Arbitrator failed to disclose within the time for disclosure a ground for disqualification of which the Arbitrator was then aware.  Respondents further deny that Petitioner should be awarded costs of suit, attorney fees incurred in this action,

and vacatur of the Arbitration Award.  Specifically, with respect to Petitioner's Attachment 10(c)(2):

     i.    Respondents deny the allegations in Paragraph 1 of Attachment 10(c)(2) that the Arbitrator failed to disclose any "material fact[.]"

    ii.    Respondents deny the allegations in Paragraph 2 of Attachment 10(c)(2) that the Arbitrator failed to disclose any "material fact[.]"

    iii.    Respondents deny the allegations in Paragraph 3 of Attachment 10(c)(2) that the Arbitrator was misclassified as a public arbitrator.

    iv.    Respondents admit the allegations in Paragraph 4 of Attachment 10(c)(2) that, pursuant to FINRA Rule 13806(c)(1), the Arbitration was to be conducted by a public arbitrator.

    v.    Respondents deny the allegations in Paragraph 5 of Attachment 10(c)(2) that the Arbitrator misrepresented information regarding his employment with AIG Financials Products Corp.

    vi.    Respondents deny the allegations in Paragraph 6 of Attachment 10(c)(2) that any underlying contracts were "illegal," and thus Respondents deny that the Arbitrator exceeded his authority by enforcing allegedly illegal contracts.

    vii.    Respondents deny the allegations in Paragraph 7 of Attachment 10(c)(2) that any underlying contracts were "illegal," and thus Respondents deny that the Arbitrator exceeded his authority by enforcing allegedly illegal contracts.

    viii.    Respondents deny the allegations in Paragraph 8 of Attachment 10(c)(2) that any underlying contracts were "illegal," and thus Respondents deny that the Arbitrator exceeded his authority by enforcing allegedly illegal contracts.

    ix.    Respondents deny the allegations in Paragraph 9 of Attachment 10(c)(2) that any underlying contracts were "illegal," and thus Respondents deny

ANSWER AND COUNTER-PETITION TO CONFIRM ARBITRATION AWARD

1    that the Arbitrator exceeded his authority by enforcing allegedly illegal

2    contracts.

3    x.    Respondents deny the allegations in Paragraph 10 of Attachment 10(c)(2)

4    that the Arbitrator exceeded his authority by assessing forum fees to

5    Petitioner.

6    **WHEREFORE**, Respondents MSSB and MSSB Financing, having fully responded

7    to the Petition, respectfully request that the Court: (i) deny Petitioner's Petition in its

8    entirety; (ii) enter judgment in favor of Respondents and against Petitioner on all claims set

9    forth in the Petition, and that the Petition be dismissed with prejudice; and (iii) grant to

10    MSSB and MSSB Financing such other and further relief as it deems just, equitable, and

11    proper.

## MORGAN STANLEY SMITH BARNEY LLC'S AND
## MORGAN STANLEY SMITH BARNEY FINANCING LLC'S
## COUNTER-PETITION TO CONFIRM ARBITRATION AWARD

15    Counter-Petitioners, MORGAN STANLEY SMITH BARNEY, LLC ("MSSB") and

16    MORGAN STANLEY SMITH BARNEY FINANCING, LLC ("MSSB Financing" or

17    collectively with MSSB, "Counter-Petitioners"), pursuant to the Federal Arbitration Act, 9

18    U.S.C. § 9, bring this Counter-Petition for an Order confirming the Financial Industry

19    Regulatory Authority ("FINRA") arbitration award dated March 10, 2023 ("Arbitration

20    Award") against Counter-Respondent, RYAN R. HYSLOP ("Hyslop" or "Counter-

21    Respondent"), entered in FINRA's Office of Dispute Resolution.

### Parties

23    1.    MSSB is a Limited Liability Company organized and existing under the laws

24    of the State of Delaware, with its principal place of business in New York.  MSSB has one

25    member: Morgan Stanley Domestic Holdings, Inc. ("MSDHI"), a Delaware corporation

26    with its principal place of business in New York.  MSDHI is solely owned by Morgan

27    Stanley Capital Management, LLC ("MSCM"), a Delaware limited liability company with

28    its principal place of business in New York.  The one member of MSCM is Morgan Stanley,

ANSWER AND COUNTER-PETITION TO CONFIRM ARBITRATION AWARD

a Delaware Corporation with its principal place of business in New York. As such, MSSB is a citizen of the states of Delaware and New York. MSSB is a securities broker-dealer and a member of FINRA.

2.    MSSB Financing is a Limited Liability Company organized and existing under the laws of the State of Delaware, with its principal place of business in New York. MSSB Financing has one member, MSDHI, a Delaware corporation with its principal place of business in New York. MSDHI is solely owned by MSCM, a Delaware limited liability company with its principal place of business in New York. The one member of MSCM is Morgan Stanley, a Delaware Corporation with its principal place of business in New York. As such, MSSB Financing is a citizen of the states of Delaware and New York.

3.    Hyslop, on information and belief, is a citizen of Nevada because, among other things: (1) he is registered to vote in Nevada, (2) owns residential real property in Nevada, and (3) receives his paystubs in Nevada. In the underlying Arbitration, Hyslop alleged he is a "dual resident" of California and Nevada. Counter-Petitioners do not believe Hyslop is a citizen of California, but it is immaterial because he is either a citizen of California or Nevada, and therefore complete diversity exists. From November 2013 through September 2020, Hyslop was a Financial Advisor with MSSB, initially in California and then Nevada.

### **Jurisdiction and Venue**

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount that was alleged in controversy in the underlying FINRA Arbitration exceeds $75,000.

5.    This Court has personal jurisdiction over Hyslop because this petition arises out of specific activities undertaken by him within the State of California. Specifically, the action arises from an Arbitration that took place in San Diego, California.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events that gave rise to the claims asserted are alleged to have occurred within the Southern District of California.

## Introduction

7.    Counter-Petitioners seek to confirm the Arbitration Award against Counter-Respondent, dated March 10, 2023, which was entered after three days of evidentiary hearings before a FINRA Dispute Resolution arbitrator ("Arbitrator") in San Diego, California.    The Arbitration Award orders Counter-Respondent to pay to Counter-Petitioners $814,358.37 in compensatory damages, plus interest "at the rate of $120.86 per day from January 18, 2023 through the date the Arbitration Award is paid."  **Exhibit 1** at 14.

## Procedural History and Underlying Arbitration

8.    On November 30, 2020, in FINRA Arbitration Case No. 20-03924, MSSB filed a Statement of Claim against Hyslop asserting claims to collect a debt of $1,297,689.08, plus accrued interest, and all costs of collection, pursuant to the contractual terms of eight fully executed promissory notes which Hyslop executed during his employment with MSSB and which are now held by MSSB Financing (the "Notes").  The Statement of Claim, without its exhibits, is attached hereto as **Exhibit 2**.  The eight Notes are attached to this Counter-Petition as **Exhibits 3** through **10**.  Counter-Respondent executed Notes 1 through 3 in California and executed Notes 4 through 8 in Nevada.

9.    On January 11 2021, Hyslop filed an Answer asserting several defenses to MSSB's allegations.  **Exhibit 11**.

10.    On April 5, 2021, MSSB filed a Notice of Note Assignment and unopposed Motion for Leave to Amend the Statement of Claim, attached hereto as **Exhibit 12** without its exhibits, to add MSSB Financing to the Arbitration.

11.    On April 21, 2021, Counter-Respondent's lawyer wrote to FINRA stating Counter-Respondent wanted to use funds maintained at MSSB (the same funds from the same accounts he complains about in his Answer) to repay a portion of the debt on his Notes.  **Exhibit 13** at 94.  Counter-Respondent's lawyer was complaining because she felt MSSB was taking too long to effect the transactions, stating "[t]ransferring money to pay off promissory notes is normally a very routine matter." *Id.* at 95.  With the assistance of

ANSWER AND COUNTER-PETITION TO CONFIRM ARBITRATION AWARD

his legal counsel, Counter-Respondent repaid approximately $630,000 of his outstanding debt on the Notes to Counter-Petitioners in April and May 2021.

12.    Specifically, Counter-Respondent paid off Notes 1 through 3 (the Notes he executed in California) and made a partial payment on Note 4.  After this repayment, Counter-Respondent still owed money on Notes 4 through 8, *i.e.* the Notes he executed in Nevada.

13.    On May 12, 2021, MSSB's Motion for Leave to Amend the Statement of Claim was granted, and MSSB Financing was added to the Arbitration.  Counter-Petitioners' Amended Statement of Claim became the operative claim in the Arbitration.  **Exhibit 14**, without exhibits.

14.    On September 27, 2022, the sole arbitrator in the Arbitration was removed and replaced with Arbitrator Charles Chia-Lin Hsieh ("Arbitrator Hsieh").

15.    On January 18-20, 2023, Arbitrator Hsieh conducted a three-day evidentiary final hearing in San Diego, California.  During the evidentiary hearing, the parties presented witnesses and evidence, and pursuant to Arbitrator Hsieh's instruction, both sides submitted extensive briefing after the final hearing for his consideration.

16.    On March 10, 2023, the unreasoned Arbitration Award was entered, stating the relief requested by the parties and awarding Counter-Petitioners $814,385.37 in compensatory damages, representing the outstanding principal and interest owed by Counter-Respondent on Notes 4 through 8 as of January 18, 2023.  Counter-Petitioners were also awarded interest "at the rate of $120.86 per day from January 18, 2023 through the date the Award is paid."  Exhibit 1 at 14.

17.    On April 10, 2023, Counter-Respondent filed his Petition to Vacate the Arbitration award in California state court.  There, he alleges in a form complaint various, barebones grounds to vacate the Arbitration Award, which are factually inaccurate and legally baseless.

18.    On April 21, 2023, Counter-Petitioners filed their Notice of Removal from State Court in this action.

19.     To date, Counter-Respondent has not paid the Arbitration Award.

20.     Upon confirmation of the Arbitration Award, Counter-Petitioners respectfully request that judgment be entered against Counter-Respondent.

### Count I

### (Confirmation of Arbitration Award Pursuant to the Federal Arbitration Act)

21.     "Section 9 of the [Federal Arbitration Act] provides that a 'party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." *Ardalan v. Macy's Inc.*, No. 5:09-CV-04894 JW, 2012 WL 2503972, at *2 n.2 (N.D. Cal. June 28, 2012), *aff'd sub nom. Ardalan v. Macy's W.*, 577 F. App'x 680 (9th Cir. 2014).

22.     As set forth above in the Answer, there are no grounds to vacate the Arbitration Award.   Accordingly, Counter-Petitioners request entry of an Order confirming the Arbitration Award pursuant to the Federal Arbitration Act.

**WHEREFORE**, Counter-Petitioners MSSB and MSSB Financing, having fully responded to the Petition and filed a Counter-Petition to Confirm the Arbitration Award, respectfully request that the Court: (i) enter judgment in favor of Counter-Petitioners and against Counter-Respondent on all claims set forth in the Counter-Petition; (ii) enter an Order confirming the Arbitration Award pursuant to 9 U.S.C. § 9; and (iii) grant to MSSB and MSSB Financing such other and further relief as it deems just, equitable, and proper.

DATED:  May 3, 2023                    GREENBERG TRAURIG, LLP


By:     */s/ Karin L. Bohmholdt*
        Email: bohmholdtk@gtlaw.com
        Attorneys for Respondents/Counter-Petitioners

1

2

## <u>INDEX OF EXHIBITS</u>

| EXHIBIT NUMBER | TITLE OF DOCUMENT | PAGE NUMBERS |
|---|---|---|
| 1 | Arbitration Award | 11-17 |
| 2 | Statement of Claim | 18-28 |
| 3 | Promissory Note 1 | 29-34 |
| 4 | Promissory Note 2 | 35-40 |
| 5 | Promissory Note 3 | 41-46 |
| 6 | Promissory Note 4 | 47-52 |
| 7 | Promissory Note 5 | 53-58 |
| 8 | Promissory Note 6 | 59-64 |
| 9 | Promissory Note 7 | 65-69 |
| 10 | Promissory Note 8 | 70-77 |
| 11 | Hyslop Answer | 78-88 |
| 12 | Notice of Note Assignment and Motion to Amend | 89-92 |
| 13 | Hyslop's Letter to FINRA re Repayment | 93-95 |
| 14 | Amended Statement of Claim | 96-107 |

ANSWER AND COUNTER-PETITION TO CONFIRM ARBITRATION AWARD

# EXHIBIT 1

Exhibit 1
Page 11

**Award**
**FINRA Dispute Resolution Services**

In the Matter of the Arbitration Between:

<u>Claimants</u>                                              <u>Case Number</u>: 20-03924
Morgan Stanley Smith Barney LLC
Morgan Stanley Smith Barney Financing

     vs.

<u>Respondent</u>                                            <u>Hearing Site</u>: San Diego, California
Ryan R. Hyslop

Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.

Nature of the Dispute: Member and Non-Member vs. Associated Person

## REPRESENTATION OF PARTIES

For Claimants Morgan Stanley Smith Barney LLC ("MSSB") and Morgan Stanley Smith Barney Financing ("MSSB Financing"): Tracy L. Gerber, Esq., Greenberg Traurig, P.A., West Palm Beach, Florida.

Hereinafter MSSB and MSSB Financing are collectively referred to as "Claimants".

For Respondent Ryan R. Hyslop ("Hyslop"): Brandon S. Reif, Esq., Reif Law Group, P.C., Los Angeles, California.

## CASE INFORMATION

Statement of Claim filed by MSSB on or about: November 30, 2020.
Amended Statement of Claim filed by Claimants on or about: April 5, 2021.
MSSB signed the Submission Agreement: November 30, 2020.
MSSB Financing did not sign the Submission Agreement.

Statement of Answer filed by Respondent on or about: January 11, 2021.
Respondent signed the Submission Agreement: January 1, 2021.

## CASE SUMMARY

In the Statement of Claim, MSSB asserted a cause of action for breach of eight promissory notes dated November 26, 2013; January 2, 2014; January 2, 2014; January 28, 2016; January 19, 2017; January 29, 2018; February 6, 2019; and February 15, 2019 (the "Notes"). Claimants

Exhibit 1
Page 12

alleged that Respondent failed to repay the balances of the Notes upon the termination of Respondent's employment with Claimants.

In the Amended Statement of Claim, MSSB Financing was added as an additional claimant.

Unless specifically admitted in the Statement of Answer, Respondent denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

## **RELIEF REQUESTED**

In the Statement of Claim, as amended, Claimants requested:
1. An award on the Notes, in the outstanding principal amount of $1,297,689.08, plus the total interest due as of Respondent's termination date in the amount of $15,812.89, plus pre-award interest on the Notes of $212.21 per day, from August 19, 2020, to the date of the award, plus post-award interest at the legal rate;
2. Fees and expenses, including the FINRA filing fee, all FINRA forum fees, and its reasonable attorneys' fees, as provided for by the Notes; and
3. Such other and further relief as the Arbitrator deems appropriate.

In the Statement of Answer, Respondent requested:
1. MSSB take nothing by way of its Arbitration Claim; and
2. Respondent recover his costs and reasonable attorneys' fees, pursuant to the terms of the Notes and California Civil Code Section 1717.

In their post-hearing brief, Claimants requested:
1. All claims in Claimants' favor;
2. $814,385.37 in the outstanding principal amount, as of January 18, 2023, plus interest at the rate of $120.86 per day thereafter until the Award is paid;
3. $252,924.98, representing attorneys' fees, costs and expenses that were incurred by Claimants;
4. All forum fees be assessed against Respondent; and
5. All relief and remedies requested by Respondent, including but not limited to his request for forum fees, attorneys' fees, and costs, be denied.

In his post-hearing brief, Respondent requested four findings in the award:
1. Claimants shall cancel and discharge all principal, interest and all additional penalties allegedly owed by Respondent, whether previously paid, now due or cancelled, on all loans;
2. Claimants must return to Respondent the sum of $2,359,368.11 (all principal and interest already paid on loans);
3. Claimants shall not impute income or issue any form of tax reporting to Respondent as to the cancellation of the loans; and
4. Claimants shall pay Respondent attorneys' fees of $254,789.50 and costs of $38,701.45.

As an alternative, Respondent requested that "Claimants shall collect nothing in the Award and that Respondent's other requests for relief are denied, without prejudice, such that Respondent may seek relief in a separate action."

Exhibit 1
Page 13

FINRA Dispute Resolution Services
Arbitration No.  20-03924
Award Page 3 of 6

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrator acknowledges having read the pleadings and other materials filed by the parties.

On April 5, 2021, MSSB filed a Motion to Amend the Statement of Claim, to which no response was filed. On May 12, 2021, the Arbitrator granted the motion.

On April 8, 2021, Respondent filed a motion to consolidate case numbers 20-03924 and 21-00664. On April 9, 2021, MSSB filed an opposition to the motion. On April 14, 2021, Respondent filed a reply in support of the motion. On May 12, 2021, the Arbitrator denied the motion.

On September 27, 2022, Charles Chia-Lin Hsieh was appointed as a replacement arbitrator in this matter.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions, the Arbitrator has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondent is liable for and shall pay to Claimants the sum of $814,385.37 in compensatory damages.

2. Respondent is liable for and shall pay to Claimants interest on the above-stated sum at the rate of $120.86 per day from January 18, 2023 through the date the Award is paid.

3. Any and all claims for relief not specifically addressed herein, including any requests for attorneys' fees, are denied.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
FINRA Dispute Resolution Services assessed a filing fee* for each claim:

Initial Claim Filing Fee                                                     =$ 3,400.00

*The filing fee is made up of a non-refundable and a refundable portion.*

### Member Fees
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm(s) that employed the associated person(s) at the time of the event(s) giving rise to the dispute. Accordingly, as a party, MSSB is assessed the following:

Member Surcharge                                                            =$ 3,025.00
Member Process Fee                                                          =$ 6,175.00

Exhibit 1
Page 14

## Late Pre-Hearing Cancellation Fees

Fees apply when a pre-hearing conference is cancelled within three business days of the scheduled conference:

| | |
|---|---:|
| May 6, 2021, cancellation requested by Respondent | =$  100.00 |
| Total Late Pre-Hearing Cancellation Fees | =$  100.00 |

The Arbitrator has assessed $34.00 of the late pre-hearing cancellation fees to MSSB.

The Arbitrator has assessed $33.00 of the late pre-hearing cancellation fees to MSSB Financing.

The Arbitrator has assessed $33.00 of the late pre-hearing cancellation to Respondent.

## Postponement Fees

Postponements granted during these proceedings for which fees were assessed or waived:

| | |
|---|---:|
| November 1-3, 2021, postponement requested by Respondent | =$  450.00 |
| Total Postponement Fees | =$  450.00 |

The Arbitrator has assessed $153.00 of the postponement fees to MSSB.

The Arbitrator has assessed $148.50 of the postponement fees to MSSB Financing.

The Arbitrator has assessed $148.50 of the postponement fees to Respondent.

## Hearing Session Fees and Assessments

The Arbitrator has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the Arbitrator, including a pre-hearing conference with the Arbitrator, which lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---:|
| Three (3) pre-hearing sessions with a single Arbitrator @ $450.00/session | | =$ | 1,350.00 |
| Pre-Hearing Conferences: | April 14, 2021 | 1 session | |
| | November 2, 2022 | 1 session | |
| | January 13, 2023 | 1 session | |
| Seven (7) hearing sessions @ $450.00/session | | =$ | 3,150.00 |
| Hearings: | January 18, 2023 | 2 sessions | |
| | January 19, 2023 | 2 sessions | |
| | January 20, 2023 | 3 sessions | |
| Total Hearing Session Fees | | =$ | 4,500.00 |

The Arbitrator has assessed $1,530.00 of the hearing session fees to MSSB.

The Arbitrator has assessed $1,485.00 of the hearing session fees to MSSB Financing.

The Arbitrator has assessed $1,485.00 of the hearing session fees to Respondent.

Exhibit 1
Page 15

FINRA Dispute Resolution Services
Arbitration No.  20-03924
Award Page 5 of 6

All balances are payable to FINRA Dispute Resolution Services and are due upon receipt.

Exhibit 1
Page 16

FINRA Dispute Resolution Services
Arbitration No.  20-03924
Award Page 6 of 6

## **ARBITRATOR**

Charles Chia-Lin Hsieh                    -                    Sole Public Arbitrator

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument, which is my award.

## **Arbitrator's Signature**


*Charles Chia-Lin Hsieh*                                    03/09/2023
Charles Chia-Lin Hsieh                                        Signature Date
Sole Public Arbitrator


Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.


March 10, 2023
Date of Service (For FINRA Dispute Resolution Services use only)

Exhibit 1
Page 17

# EXHIBIT 2

Exhibit 2
Page 18

1  MAURICIO S. BEUGELMANS, Bar No. 201131
   mbeugelmans@mmlawus.com
2  ANYA N. THEPOT, Bar No. 318430
   athepot@mmlawus.com
3  MURPHY & MCGONIGLE, RLLP
   44 Montgomery Street, Suite 3750
4  San Francisco, California 94104
   Telephone:    415.651.5707
5  Facsimile:     415.651.5708

6  Attorneys for Claimant
   MORGAN STANLEY SMITH BARNEY LLC

7

8                              BEFORE

9               FINRA DISPUTE RESOLUTION, INC.

10

11  MORGAN STANLEY SMITH BARNEY LLC,        FINRA Case No.:

12           Claimant,

13      v.                                   RULE 13806 STATEMENT OF CLAIM

14  RYAN HYSLOP, individually,

15           Respondent.

16

17          Morgan Stanley Smith Barney LLC ("Morgan Stanley" or "Claimant"), through its undersigned

18  counsel, hereby files its Rule 13806 Statement of Claim against former employee, Ryan Hyslop ("Mr.

19  Hyslop" or "Respondent"), CRD Number 5693941.

20                          **I.  PARTIES**

21          1.      Morgan Stanley Smith Barney LLC is a Financial Industry Regulatory Authority, Inc.

22  ("FINRA") member firm with its principal place of business in Purchase, New York.  In this arbitration,

23  Morgan Stanley seeks an award against Respondent in the outstanding principal amount of

24  $1,313,501.97 along with pre-award interest, post-award interest at the legal rate, and the costs and

25  expenses of this arbitration, including its reasonable attorneys' fees.

26          2.      Respondent was employed as a Financial Advisor from November 26, 2013, to August

27  19, 2020, at a Morgan Stanley branch located in Stateline, Nevada.  During his employment with

28  Morgan Stanley, Respondent was an associated person of a member of FINRA.

1

Exhibit 2
Page 19

RULE 13806 STATEMENT OF CLAIM

3.     Respondent is required to submit this matter to arbitration pursuant to: (a) the terms of the written agreements that he executed during his employment, including arbitration clauses contained in the written promissory notes that are the subject of this arbitration, copies of which are attached hereto as **Exhibits A, B, C, D, E, F, G** and **H**; and (b) the rules of FINRA.

## II.  JURISDICTION AND HEARING VENUE

4.     Counsel for Morgan Stanley has properly executed a Uniform Submission Agreement on behalf of Claimant in this matter.  FINRA has jurisdiction to hear and decide this controversy, and Respondent is bound to arbitrate this matter.

5.     On November 26, 2013, Morgan Stanley Smith Barney FA Notes Holdings LLC ("MSSB FA Notes") and Respondent voluntarily entered into a promissory note ("Note A").[1]  On January 2, 2014, MSSB FA Notes and Respondent voluntarily entered into a second promissory Note ("Note B").  On January 2, 2014, MSSB FA Notes and Respondent voluntarily entered into a third promissory Note ("Note C").  On January 28, 2016, MSSB FA Notes and Respondent voluntarily entered into a fourth promissory Note ("Note D").  On January 19, 2017, MSSB FA Notes and Respondent voluntarily entered into a fifth promissory Note ("Note E").  On January 29, 2018, MSSB FA Notes and Respondent voluntarily entered into a sixth promissory Note ("Note F").  On February 6, 2019, MSSB FA Notes and Respondent voluntarily entered into a seventh promissory Note ("Note G").  On or about February 15, 2019, MSSB FA Notes and Respondent voluntarily entered into a Lending Growth Award Contract Promissory Note & Release ("Note H").  Note H funded on or about March 15, 2019.  Notes A-H are referred to collectively herein as the "Notes."  Pursuant to the Notes, the parties agreed that any controversy or claim arising out of the Notes would be settled by arbitration in accordance with the rules of FINRA.

6.     Morgan Stanley respectfully requests that the hearing in this case be scheduled in Reno, Nevada as it is the hearing location that is closest to the location where the associated person was

---

[1] On October 22, 2019, Morgan Stanley Smith Barney FA Notes Holdings LLC and Morgan Stanley entered into an assignment agreement whereby MSSB FA Notes sold and transferred all of its right, title and interest in and to the Notes to Morgan Stanley.  Morgan Stanley is filing this claim as the holder of Respondent's Notes.

2

Exhibit 2
Page 20

employed at the time the dispute arose.  Morgan Stanley also requests arbitration panel selection pursuant to Rule 13806 of the FINRA Code of Arbitration Procedure for Industry Disputes.

### III.  FACTS

7.      Between on or about November 26, 2013 and on or about February 15, 2019, Morgan Stanley loaned Respondent a total of $3,027,828.64.  Morgan Stanley's loans to Respondent were evidenced by eight promissory notes signed by Respondent, as further discussed below.

### Note A

8.      On or about November 26, 2013, MSSB FA Notes loaned Respondent $1,278,200.00. The loan was evidenced by unambiguous Note A signed by Respondent, a copy of which is attached hereto as **Exhibit A**.[2]

9.      By the terms of Note A, Respondent agreed to repay $1,278,200.00 in nine annual payments of $142,022.22, beginning on November 26, 2014, plus interest at the rate of 1.75% per annum.

10.     Note A provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note A become immediately due and payable.

11.     Note A also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note A and any outstanding balance due under Note A would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 5.75% per annum.

12.     Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note A, in the amount of $426,066.72, immediately became due and owing.  As of the date of Respondent's termination, the total

---

[2] Concurrent with the execution of the Notes identified herein, Respondent entered into related Bonus Agreements for Notes A-H (the "Bonus Agreements") with Morgan Stanley, under which Morgan Stanley agreed to pay Respondent bonus payments equivalent to the annual installments to be paid by Respondent under the Notes, plus applicable interest.  However, as set forth in the Bonus Agreements, no payments were to be due and payable unless Respondent continuously remained in the employment of Morgan Stanley through the date the payments became due and payable.  Copies of the Bonus Agreements are attached hereto in **Exhibits A-H** immediately behind the Notes.

Exhibit 2
Page 21

interest accrued was $5,439.34.  In addition, interest has been accruing at $66.94 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

### Note B

13.    On or about January 2, 2014, MSSB FA Notes loaned Respondent $182,600.00.  The loan was evidenced by unambiguous Note B signed by Respondent, a copy of which is attached hereto as **Exhibit B**.

14.    By the terms of Note B, Respondent agreed to repay $182,600.00 in eight annual payments of $22,825.00, beginning on December 30, 2014, plus interest at the rate of 1.75% per annum.

15.    Note B provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note B become immediately due and payable.

16.    Note B also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note B and any outstanding balance due under Note B would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 5.75% per annum.

17.    Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note B, in the amount of $45,650.00, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $508.57.  In addition, interest has been accruing at $7.17 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

### Note C

18.    On or about January 2, 2014, MSSB FA Notes loaned Respondent $182,600.00.  The loan was evidenced by unambiguous Note C signed by Respondent, a copy of which is attached hereto as **Exhibit C**.

///

19.    By the terms of Note C, Respondent agreed to repay $182,600.00 in eight annual payments of $22,825.00, beginning on January 2, 2015, plus interest at the rate of 1.75% per annum.

20.    Note C provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note C become immediately due and payable.

21.    Note C also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note C and any outstanding balance due under Note C would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 5.75% per annum.

22.    Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note C, in the amount of $45,650.00, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $502.03.  In addition, interest has been accruing at $7.17 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

### **Note D**

23.    On or about January 28, 2016, MSSB FA Notes loaned Respondent $315,398.51.  The loan was evidenced by unambiguous Note D signed by Respondent, a copy of which is attached hereto as **Exhibit D**.

24.    By the terms of Note D, Respondent agreed to repay $315,398.51 in seven annual payments of $45,056.93, beginning on January 27, 2017, plus interest at the rate of 1.25% per annum.

25.    Note D provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note D become immediately due and payable.

26.    Note D also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note D and any outstanding balance due under Note D

would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 5.25% per annum.

27.     Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note D, in the amount of $135,170.79, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $946.38.  In addition, interest has been accruing at $19.39 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

## Note E

28.     On or about January 19, 2017, MSSB FA Notes loaned Respondent $353,761.88.  The loan was evidenced by unambiguous Note E signed by Respondent, a copy of which is attached hereto as **Exhibit E**.

29.     By the terms of Note E, Respondent agreed to repay $353,761.88 in six annual payments of $58,960.31, beginning on January 17, 2018, plus interest at the rate of 2% per annum.

30.     Note E provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note E become immediately due and payable.

31.     Note E also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note E and any outstanding balance due under Note E would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 6.25% per annum.

32.     Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note E, in the amount of $176,880.95, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $2,078.11.  In addition, interest has been accruing at $29.00 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

1

## Note F

2    33.    On or about January 29, 2018, MSSB FA Notes loaned Respondent $459,513.37.  The

3  loan was evidenced by unambiguous Note F signed by Respondent, a copy of which is attached hereto

4  as **Exhibit F**.

5    34.    By the terms of Note F, Respondent agreed to repay $459,513.37 in five annual payments

6  of $91,902.67, beginning on January 26, 2019, plus interest at the rate of 2.25% per annum.

7    35.    Note F provides, *inter alia*, that if Respondent's employment terminated, voluntarily or

8  involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note F become

9  immediately due and payable.

10    36.    Note F also provides, *inter alia*, that if Respondent's employment terminated voluntarily

11  or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due,

12  Respondent would be deemed to be in Default on Note F and any outstanding balance due under Note F

13  would immediately become due and payable, together with interest accruing from the date of Default at

14  the Interest Rate of 6.25% per annum.

15    37.    Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result

16  of Respondent's termination, the outstanding principal balance due under Note F, in the amount of

17  $275,708.03, immediately became due and owing.  As of the date of Respondent's termination, the total

18  interest accrued was $3,491.55.  In addition, interest has been accruing at $47.08 per day since

19  Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance

20  of the loan he received from Morgan Stanley.

21

## Note G

22    38.    On or about February 6, 2019, MSSB FA Notes loaned Respondent $240,826.24.  The

23  loan was evidenced by unambiguous Note G signed by Respondent, a copy of which is attached hereto

24  as **Exhibit G**.

25    39.    By the terms of Note G, Respondent agreed to repay $240,826.24 in four annual

26  payments of $60,206.56, beginning on February 1, 2020, plus interest at the rate of 2.75% per annum.

27  ///

28  ///

40.    Note G provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note G become immediately due and payable.

41.    Note G also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note G and any outstanding balance due under Note G would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 6.75% per annum.

42.    Respondent's Morgan Stanley employment terminated on August 19, 2020. As a result of Respondent's termination, the outstanding principal balance due under Note G, in the amount of $180,619.68, immediately became due and owing. As of the date of Respondent's termination, the total interest accrued was $2,174.23. In addition, interest has been accruing at $33.31 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

### Note H

43.    On or about February 15, 2019, MSSB FA Notes loaned Respondent $14,928.64. The loan was evidenced by unambiguous Note H signed by Respondent, a copy of which is attached hereto as **Exhibit H**. Note H funded on or about March 15, 2019.

44.    By the terms of Note H, Respondent agreed to repay $14,928.64 in five annual payments of $2,985.73, beginning on March 15, 2020, plus interest at the rate per annum equal to the Federal mid-term applicable rate as determined by the Internal Revenue Service for March of 2019 or in the month of disbursement, if later (2.59%).

45.    Note H provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note H become immediately due and payable.

46.    Note H also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note H and any outstanding balance due under Note H

8

Exhibit 2
Page 26

would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 6.59% per annum.

47.    Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note H, in the amount of $11,942.91, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $132.69.  In addition, interest has been accruing at $2.15 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

### Respondent's Failure to Honor his Obligations Under the Notes and Morgan Stanley's Demand for Payment

48.    On August 21, 2020, Morgan Stanley made a written demand upon Respondent for repayment of the amount owed under the Notes.  A demand letter was sent to Respondent's home, a copy of which is attached hereto as **Exhibit I**.  To date, Respondent has refused, and continues to refuse, to honor his obligations under the Notes.

49.    As a result of Respondent's failure to honor his obligations to Morgan Stanley, Morgan Stanley has been forced to commence this action, and to retain counsel to represent it in this action. Accordingly, Morgan Stanley has incurred attorneys' fees and other costs that it would not have incurred had Respondent honored his obligations to Morgan Stanley.  Pursuant to the terms of the Notes, Respondent agreed that he would pay all costs and expenses, including attorneys' fees, incurred or sustained by Morgan Stanley in connection with the enforcement of the Notes.

50.    Morgan Stanley has performed all terms and conditions required of it under the Notes. The amount due and owing to Morgan Stanley is *in excess* of $1,313,501.97 which includes: (a) $1,297,689.08, the principal balance due and owing on the Notes as of March 15, 2020; (b) $15,812.89 the accrued interest due and owing on the Notes as of August 19, 2020; (c) interest on the Notes at $212.21 per day from August 19, 2020, to the date of the award; and (d) all costs of collection, including, but not limited to, attorneys' fees, filing fees and all costs and expenses associated with arbitration.

///

## IV.  CONCLUSION

WHEREFORE, Morgan Stanley respectfully requests that the Panel enter an award:

(1)      On the Notes, in the outstanding principal amount of $1,297,689.08, plus the total interest due as of Respondent's termination date in the amount of $15,812.89, plus pre-award interest on the Notes of $212.21 per day, from August 19, 2020, to the date of the award, plus post-award interest at the legal rate; and

(2)      For its fees and expenses, including the FINRA filing fee, all FINRA forum fees, and its reasonable attorneys' fees, as provided for by the Notes; and

(3)      Such other and further relief as the Panel deems appropriate.

November 30, 2020                               Respectfully submitted,

                                          MAURICIO S. BEUGELMANS
                                          ANYA N. THEPOT
                                          MURPHY & MCGONIGLE, RLLP
                                          Attorneys for Morgan Stanley Smith Barney LLC

Exhibit 2
Page 28

# EXHIBIT 3

Exhibit 3
Page 29

MORGAN STANLEY SMITH BARNEY FA NOTES HOLDINGS LLC          PROMISSORY NOTE

$1,278,200.00                    Carlsbad, CA                    November 26, 2013
(AMOUNT)                    (CITY AND STATE)                    (DATE)

Subject to deposit, the undersigned ("Borrower") hereby affirms and acknowledges his/her indebtedness to Morgan Stanley Smith Barney FA Notes Holdings LLC ("Notes Holdings"), at (branch address) 5746 Armada Dr., Carlsbad, CA 92008 or any subsequent holder of this Promissory Note (the "Note Holder") for the entire amount indicated above, plus accrued interest. The loan proceeds shall be deposited into Borrower's employee account with Morgan Stanley Smith Barney LLC.

In connection with the aforementioned, the Borrower promises to pay to the Note Holder the principal sum of one million two hundred seventy eight thousand two hundred dollars ($1,278,200.00) with interest on any unpaid balance thereof at the rate of 1.75% per annum ("Interest Rate") (which is equal to or exceeds the applicable Federal Rate) on the balance remaining from time to time unpaid. The interest rate on this loan is determined as of the date of execution of this Note and shall remain fixed for the duration of the loan. Payments of principal and interest shall be due and payable in the amounts and on the dates provided for hereafter. Accrued interest shall be due and payable at the same time that principal installments are due and payable. Payment of principal shall be made as follows on the following "Payment Dates":

$142,022.22 on November 26, 2014

$142,022.22 on November 26, 2015

$142,022.22 on November 26, 2016

$142,022.22 on November 26, 2017

$142,022.22 on November 26, 2018

$142,022.22 on November 26, 2019

$142,022.22 on November 26, 2020

$142,022.22 on November 26, 2021

$142,022.22 on November 26, 2022

By signing this Note, Borrower expressly agrees, authorizes and directs Notes Holdings, or any of its affiliates, subsidiaries, successors, designees or assigns, including but not limited to Morgan Stanley Smith Barney LLC d/b/a Morgan Stanley Wealth Management ("Morgan Stanley") (collectively, the "Authorized Parties"), to deduct on each Payment Date the annual installment payment from any securities account that Borrower maintains with the Authorized Parties, either individually or jointly with another person, and to deliver such deduction to the Note Holder with a direction to apply it to the outstanding amount then owed under this Note. If the deduction from the securities account of the Borrower is not sufficient, then the Borrower shall pay the outstanding amount by check. Should full payment by the Borrower not be made by

Exhibit 3
Page 30

CONFIDENTIAL

HYSLOP-MS-00000019
MSSB-GT(Hyslop)-000466

such deduction and/or check within ten (10) business days following the applicable Payment Date, Borrower expressly agrees, authorizes and directs the Authorized Parties to deduct such payment from any Compensation (as defined below) owed to Borrower from the Authorized Parties, and to deliver such deduction to the Note Holder with a direction to apply it to the indebtedness hereunder. Payments received by the Note Holder shall be applied first to any accrued and unpaid interest due on this Note and then to the unpaid principal. For purposes of this Note, the term "Compensation" shall mean all bonuses, commissions, incentive compensation, and any other remuneration paid to Borrower by an Authorized Party, but shall not include Borrower's salary for services actually rendered. Notwithstanding any authority to recover against Borrower contained in this Note, there shall be no authority to accelerate the payment or settlement of any Compensation that constitutes a deferral of compensation for purposes of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), except to the extent that such acceleration would not cause Borrower to recognize income for United States federal income tax purposes prior to the time of payment or settlement of the compensation or to incur interest or additional tax under Section 409A.

The Note Holder is not limited to recovering any amounts due and payable under this Note (including interest) from any securities account that Borrower maintains with the Authorized Parties or Compensation payable to Borrower from the Authorized Parties and can recover all such amounts loaned to Borrower, plus interest, as full recourse obligations of Borrower. As a result, Borrower shall be personally liable for payment of this Note, and any and all assets of Borrower, wherever located throughout the world, may be applied to the satisfaction of Borrower's obligations hereunder.

All amounts outstanding under the Note shall automatically be, and become, immediately due and payable, without notice or demand, (i) if the Borrower's employment with an Authorized Party terminates voluntarily or involuntarily for any reason or no reason whatsoever, including by reason of death, total or permanent disability, or retirement, (ii) if the Borrower fails to maintain all licenses and registrations from the Financial Industry Regulatory Authority, and such other exchanges, state securities commissions and other regulatory bodies as the Authorized Parties shall determine are necessary for Borrower to possess in order to conduct securities or commodities transactions, (iii) if the Borrower fails to fully pay the principal and interest due for any Payment Date within seventy-five (75) days following any such Payment Date, or (iv) upon the filing of a voluntary or involuntary petition by or against the Borrower under any provision of any Federal or State bankruptcy or similar laws, any assignment by Borrower for the benefit of creditors, the entry of judgment or issuance of an order of attachment or garnishment against the Borrower, or the commencement of any proceedings or procedure for enforcement of a money judgment against the Borrower. Each of the items designated (i) through (iv) are hereinafter referred to as "Acceleration Events." Upon the happening of any of the Acceleration Events, the Borrower shall be deemed to be in Default on the Note and any outstanding balance due on this Note will become immediately due and payable, together with interest accruing from the date of Default, at the Interest Rate plus 4% per annum. In the event of Default, an Authorized Party may report information about your account to credit bureaus. The Borrower hereby waives presentment, demand for payment, protest or notice of any kind in connection with this Note.

Exhibit 3
Page 31

The Borrower may prepay, without premium or penalty, all or any portion of the aggregate principal amount of the obligations due hereunder. Any such prepayment shall include all accrued and unpaid interest on the principal sum being repaid and shall be applied in chronologically inverse order of amortization.

Borrower understands and agrees that no portion of the proceeds of any loan offered pursuant to Morgan Stanley's Portfolio Loan Account ("PLA") program or any similar program offered by any of the Authorized Parties may be used to repay any amounts due and payable under this Note.

Borrower understands, agrees and directs the Authorized Parties that in the event the Borrower defaults in any payment or a portion of any payment due hereunder, the Authorized Parties, as agents of the Note Holder, shall have the right, without notice, and to the maximum extent permitted by applicable law, to take steps necessary or appropriate to enforce and/or ensure compliance with any of the terms or conditions of the Note, including, but not limited to, bringing legal action as contemplated hereunder to recover all amounts outstanding hereunder and/or withholding from any and all Compensation, securities, property of the Borrower or such other amounts due or held in an account for the undersigned at Morgan Stanley or any of its respective affiliates (or successors), an amount equal to all amounts outstanding hereunder and to deliver such withheld amounts to the Note Holder with a direction to apply such amounts to the indebtedness hereunder.

Borrower hereby agrees to indemnify and hold harmless (to the fullest extent permitted by applicable law), and to reimburse, the Note Holder and any Authorized Party and their respective affiliates, subsidiaries, officers, directors, employees, agents, controlling persons, successors, designees, and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any liabilities, losses, damages, costs, expenses (including attorneys' fees), actions, suits, judgments or investigative or administrative proceedings ("Liabilities"), other than Liabilities arising as a result of the Note Holder's or Authorized Party's gross negligence or willful misconduct, that may be suffered or incurred by any such indemnified person in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provisions of this Note shall not affect the legality, validity or enforceability of the remaining provisions hereof. No previous waiver and no failure or delay by the Note Holder or Authorized Party in acting with respect to the terms of this Note shall constitute a waiver of any breach, default or failure of condition under this Note. A waiver of any term of this Note or any of the obligations secured thereby must be made in writing by a duly-authorized officer of the Note Holder and shall be limited to the express terms of such waiver. Borrower agrees to make all payments under this Note without set-off or deduction and regardless of any counterclaim or defense.

This Note is not a contract of employment for any period of time. Borrower's employment with Morgan Stanley, the Authorized Party or any of its affiliates or related entities, as applicable, is on an at-will

Exhibit 3
Page 32

basis and nothing herein shall be construed as a contract of employment for a definite term and Borrower's employment can be terminated at any time for any reason or no reason.

This Note shall be binding, in the event of Borrower's death, on Borrower's estate, including, but not limited to, Borrower's personal representatives, heirs, legatees, and executors. This Note shall inure to the benefit of the Note Holder. Note Holder retains the right to assign its rights, title and interest in this Note as it may elect. Borrower expressly consents to any such, or any subsequent, assignment by Note Holder or any successor to Note Holder. Borrower may not assign or transfer this Note or any of Borrower's obligations hereunder.

It is the intention of the Note Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated as described above, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date hereof until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the Note Holder either be rebated to Borrower or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to Borrower. The aggregate of all interest (whether designated as interest) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal balance of this Note remaining unpaid from time to time. If such interest does exceed the maximum legal rate, it shall be deemed a mistake and such excess shall be canceled automatically and, if theretofore paid, rebated to Borrower or credited on the principal amount of this Note, or if this Note has been repaid, then such excess shall be rebated to Borrower.

All notices, requests, demands and other communications to be given to the Borrower pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the Borrower's last known address or such other address as the Borrower shall have designated by notice in writing to the Note Holder, or any successor thereto, in accordance with this paragraph. All notices, requests, demands and other communications to be given to the Note Holder pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the address set forth in the corporate records or such other address as the Note Holder shall have designated by notice in writing to Borrower in accordance with this paragraph.

Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Borrower expressly acknowledges and agrees that Note Holder or any Authorized Party or their respective affiliates, subsidiaries, successors, designees, and assigns, including, but not limited to Morgan Stanley, may commence

Exhibit 3
Page 33

CONFIDENTIAL
CONFIDENTIAL

FINRA arbitration proceedings as contemplated hereunder to enforce the terms and conditions of this Note, and expressly waives any right to assert in opposition to any claim by Note Holder or any Authorized Party that said claimant(s) lack standing to commence FINRA arbitration proceedings. To the fullest extent permitted by law, Borrower expressly waives the right to assert a counterclaim in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note. Borrower expressly agrees that any such counterclaim shall only be made by Borrower in a separate arbitration proceeding. The foregoing does not preclude Borrower from asserting a valid defense, if any, in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note.

No modification of this Note shall be binding or enforceable unless in a writing signed by the Note Holder, or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns thereto, and Borrower. Notwithstanding the foregoing, the Note Holder retains the right to make modifications to this Note that it deems advisable, in its sole discretion, to allow it, its parents, and/or its affiliates to comply with or satisfy any applicable legal, regulatory, or governmental requirements or to qualify for any government loan, subsidy, or other programs.

This Note contains the entire agreement and understanding of the parties with respect to the loan evidenced by this Note, and this Note supersedes all prior communications, representations and negotiations with respect thereto. In the event of any inconsistencies between the terms of this Note and the terms of any other document related to the loan evidenced by the Note, the terms of this Note shall control.

By executing this Note, Borrower expressly acknowledges and agrees that this Note does not constitute a bonus or any other form of compensation, and if Borrower voluntarily terminates Borrower's employment with the Authorized Party or is terminated by the Authorized Party for any reason or no reason, or if one of the other circumstances described in the Note occurs, all outstanding principal and accrued interest under the Note will become immediately due and payable to the Note Holder.

BORROWER

Signature - Ryan Hyslop                    11/26/13
                                            Date

Exhibit 3
Page 34

CONFIDENTIAL                    CONFIDENTIAL           HYSLOP-MS-00000023
                                                       MSSB-GT(Hyslop)-000470

# EXHIBIT 4

Exhibit 4
Page 35

MORGAN STANLEY SMITH BARNEY FA NOTES HOLDINGS LLC          PROMISSORY NOTE

$182,600.00          _CARLSBAD   CA_          December 30, 2013

(AMOUNT)          (CITY AND STATE)          (DATE)

Subject to deposit, the undersigned ("Borrower") hereby affirms and acknowledges his/her indebtedness to Morgan Stanley Smith Barney FA Notes Holdings LLC ("Notes Holdings"), at (branch address) _5796 ARMADA #200_ , _92008_, or any subsequent holder of this Promissory Note (the "Note Holder") for the entire amount indicated above, plus accrued interest. The loan proceeds shall be deposited into Borrower's employee account with Morgan Stanley Smith Barney LLC.

In connection with the aforementioned, the Borrower promises to pay to the Note Holder the principal sum of one hundred eighty-two thousand six hundred dollars and zero cents ($182,600.00) with interest on any unpaid balance thereof at the rate of 1.75% per annum ("Interest Rate") (which is equal to or exceeds the applicable Federal Rate) on the balance remaining from time to time unpaid. The interest rate on this loan is determined as of the date of execution of this Note and shall remain fixed for the duration of the loan. Payments of principal and interest shall be due and payable in the amounts and on the dates provided for hereafter. Accrued interest shall be due and payable at the same time that principal installments are due and payable. Payment of principal shall be made as follows on the following "Payment Dates":

$22,825.00 on December 30, 2014

$22,825.00 on December 30, 2015

$22,825.00 on December 30, 2016

$22,825.00 on December 30, 2017

$22,825.00 on December 30, 2018

$22,825.00 on December 30, 2019

$22,825.00 on December 30, 2020

$22,825.00 on December 30, 2021

By signing this Note, Borrower expressly agrees, authorizes and directs Notes Holdings, or any of its affiliates, subsidiaries, successors, designees or assigns, including but not limited to Morgan Stanley Smith Barney LLC d/b/a Morgan Stanley Wealth Management ("Morgan Stanley") (collectively, the "Authorized Parties"), to deduct on each Payment Date the annual installment payment from any securities account that Borrower maintains with the Authorized Parties, either individually or jointly with another person, and to deliver such deduction to the Note Holder with a direction to apply it to the outstanding amount then owed under this Note. If the deduction from the securities account of the Borrower is not sufficient, then the Borrower shall pay the outstanding amount by check. Should full payment by the Borrower not be made by such deduction and/or check within ten (10) business days following the applicable Payment Date, Borrower

Exhibit 4
Page 36

expressly agrees, authorizes and directs the Authorized Parties to deduct such payment from any Compensation (as defined below) owed to Borrower from the Authorized Parties, and to deliver such deduction to the Note Holder with a direction to apply it to the indebtedness hereunder. Payments received by the Note Holder shall be applied first to any accrued and unpaid interest due on this Note and then to the unpaid principal. For purposes of this Note, the term "Compensation" shall mean all bonuses, commissions, incentive compensation, and any other remuneration paid to Borrower by an Authorized Party, but shall not include Borrower's salary for services actually rendered. Notwithstanding any authority to recover against Borrower contained in this Note, there shall be no authority to accelerate the payment or settlement of any Compensation that constitutes a deferral of compensation for purposes of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), except to the extent that such acceleration would not cause Borrower to recognize income for United States federal income tax purposes prior to the time of payment or settlement of the compensation or to incur interest or additional tax under Section 409A.

The Note Holder is not limited to recovering any amounts due and payable under this Note (including interest) from any securities account that Borrower maintains with the Authorized Parties or Compensation payable to Borrower from the Authorized Parties and can recover all such amounts loaned to Borrower, plus interest, as full recourse obligations of Borrower. As a result, Borrower shall be personally liable for payment of this Note, and any and all assets of Borrower, wherever located throughout the world, may be applied to the satisfaction of Borrower's obligations hereunder.

All amounts outstanding under the Note shall automatically be, and become, immediately due and payable, without notice or demand, (i) if the Borrower's employment with an Authorized Party terminates voluntarily or involuntarily for any reason or no reason whatsoever, including by reason of death, total or permanent disability, or retirement, (ii) if the Borrower fails to maintain all licenses and registrations from the Financial Industry Regulatory Authority, and such other exchanges, state securities commissions and other regulatory bodies as the Authorized Parties shall determine are necessary for Borrower to possess in order to conduct securities or commodities transactions, (iii) if the Borrower fails to fully pay the principal and interest due for any Payment Date within seventy-five (75) days following any such Payment Date, or (iv) upon the filing of a voluntary or involuntary petition by or against the Borrower under any provision of any Federal or State bankruptcy or similar laws, any assignment by Borrower for the benefit of creditors, the entry of judgment or issuance of an order of attachment or garnishment against the Borrower, or the commencement of any proceedings or procedure for enforcement of a money judgment against the Borrower. Each of the items designated (i) through (iv) are hereinafter referred to as "Acceleration Events." Upon the happening of any of the Acceleration Events, the Borrower shall be deemed to be in Default on the Note and any outstanding balance due on this Note will become immediately due and payable, together with interest accruing from the date of Default, at the Interest Rate plus 4% per annum. In the event of Default, an Authorized Party may report information about your account to credit bureaus. The Borrower hereby waives presentment, demand for payment, protest or notice of any kind in connection with this Note.

The Borrower may prepay, without premium or penalty, all or any portion of the aggregate principal

Exhibit 4
Page 37

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000029

MSSB-GT(Hyslop)-000476

amount of the obligations due hereunder. Any such prepayment shall include all accrued and unpaid interest on the principal sum being repaid and shall be applied in chronologically inverse order of amortization.

Borrower understands and agrees that no portion of the proceeds of any loan offered pursuant to Morgan Stanley's Portfolio Loan Account ("PLA") program or any similar program offered by any of the Authorized Parties may be used to repay any amounts due and payable under this Note.

Borrower understands, agrees and directs the Authorized Parties that in the event the Borrower defaults in any payment or a portion of any payment due hereunder, the Authorized Parties, as agents of the Note Holder, shall have the right, without notice, and to the maximum extent permitted by applicable law, to take steps necessary or appropriate to enforce and/or ensure compliance with any of the terms or conditions of the Note, including, but not limited to, bringing legal action as contemplated hereunder to recover all amounts outstanding hereunder and/or withholding from any and all Compensation, securities, property of the Borrower or such other amounts due or held in an account for the undersigned at Morgan Stanley or any of its respective affiliates (or successors), an amount equal to all amounts outstanding hereunder and to deliver such withheld amounts to the Note Holder with a direction to apply such amounts to the indebtedness hereunder.

Borrower hereby agrees to indemnify and hold harmless (to the fullest extent permitted by applicable law), and to reimburse, the Note Holder and any Authorized Party and their respective affiliates, subsidiaries, officers, directors, employees, agents, controlling persons, successors, designees, and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any liabilities, losses, damages, costs, expenses (including attorneys' fees), actions, suits, judgments or investigative or administrative proceedings ("Liabilities"), other than Liabilities arising as a result of the Note Holder's or Authorized Party's gross negligence or willful misconduct, that may be suffered or incurred by any such indemnified person in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provisions of this Note shall not affect the legality, validity or enforceability of the remaining provisions hereof. No previous waiver and no failure or delay by the Note Holder or Authorized Party in acting with respect to the terms of this Note shall constitute a waiver of any breach, default or failure of condition under this Note. A waiver of any term of this Note or any of the obligations secured thereby must be made in writing by a duly-authorized officer of the Note Holder and shall be limited to the express terms of such waiver. Borrower agrees to make all payments under this Note without set-off or deduction and regardless of any counterclaim or defense.

This Note is not a contract of employment for any period of time. Borrower's employment with Morgan Stanley, the Authorized Party or any of its affiliates or related entities, as applicable, is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term and Borrower's

Exhibit 4
Page 38

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000030

MSSB-GT(Hyslop)-000477

employment can be terminated at any time for any reason or no reason.

    This Note shall be binding, in the event of Borrower's death, on Borrower's estate, including, but not limited to, Borrower's personal representatives, heirs, legatees, and executors. This Note shall inure to the benefit of the Note Holder. Note Holder retains the right to assign its rights, title and interest in this Note as it may elect. Borrower expressly consents to any such, or any subsequent, assignment by Note Holder or any successor to Note Holder. Borrower may not assign or transfer this Note or any of Borrower's obligations hereunder.

    It is the intention of the Note Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated as described above, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date hereof until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the Note Holder either be rebated to Borrower or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to Borrower. The aggregate of all interest (whether designated as interest) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal balance of this Note remaining unpaid from time to time. If such interest does exceed the maximum legal rate, it shall be deemed a mistake and such excess shall be canceled automatically and, if theretofore paid, rebated to Borrower or credited on the principal amount of this Note, or if this Note has been repaid, then such excess shall be rebated to Borrower.

    All notices, requests, demands and other communications to be given to the Borrower pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the Borrower's last known address or such other address as the Borrower shall have designated by notice in writing to the Note Holder, or any successor thereto, in accordance with this paragraph. All notices, requests, demands and other communications to be given to the Note Holder pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the address set forth in the corporate records or such other address as the Note Holder shall have designated by notice in writing to Borrower in accordance with this paragraph.

    Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Borrower expressly acknowledges and agrees that Note Holder or any Authorized Party or their respective affiliates, subsidiaries, successors, designees, and assigns, including, but not limited to Morgan Stanley, may commence FINRA arbitration proceedings as contemplated hereunder to enforce the terms and conditions of this Note,

Exhibit 4
Page 39

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000031
MSSB-GT(Hyslop)-000478

and expressly waives any right to assert in opposition to any claim by Note Holder or any Authorized Party that said claimant(s) lack standing to commence FINRA arbitration proceedings. To the fullest extent permitted by law, Borrower expressly waives the right to assert a counterclaim in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note. Borrower expressly agrees that any such counterclaim shall only be made by Borrower in a separate arbitration proceeding. The foregoing does not preclude Borrower from asserting a valid defense, if any, in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note.

No modification of this Note shall be binding or enforceable unless in a writing signed by the Note Holder, or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns thereto, and Borrower. Notwithstanding the foregoing, the Note Holder retains the right to make modifications to this Note that it deems advisable, in its sole discretion, to allow it, its parents, and/or its affiliates to comply with or satisfy any applicable legal, regulatory, or governmental requirements or to qualify for any government loan, subsidy, or other programs.

This Note contains the entire agreement and understanding of the parties with respect to the loan evidenced by this Note, and this Note supersedes all prior communications, representations and negotiations with respect thereto. In the event of any inconsistencies between the terms of this Note and the terms of any other document related to the loan evidenced by the Note, the terms of this Note shall control.

By executing this Note, Borrower expressly acknowledges and agrees that this Note does not constitute a bonus or any other form of compensation, and if Borrower voluntarily terminates Borrower's employment with the Authorized Party or is terminated by the Authorized Party for any reason or no reason, or if one of the other circumstances described in the Note occurs, all outstanding principal and accrued interest under the Note will become immediately due and payable to the Note Holder.

BORROWER

Signature - Ryan Hyslop                    1/2/2014
                                           Date

Exhibit 4
Page 40

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000032

MSSB-GT(Hyslop)-000479

# EXHIBIT 5

Exhibit 5
Page 41

MORGAN STANLEY SMITH BARNEY FA NOTES HOLDINGS LLC        PROMISSORY NOTE

$182,600.00            _CALLSBAD    CA_____            January 2, 2014

(AMOUNT)            (CITY AND STATE)            (DATE)

Subject to deposit, the undersigned ("Borrower") hereby affirms and acknowledges his/her indebtedness to Morgan Stanley Smith Barney FA Notes Holdings LLC ("Notes Holdings"), at (branch address) _5796 ARMADA #200  92008_, or any subsequent holder of this Promissory Note (the "Note Holder") for the entire amount indicated above, plus accrued interest. The loan proceeds shall be deposited into Borrower's employee account with Morgan Stanley Smith Barney LLC.

In connection with the aforementioned, the Borrower promises to pay to the Note Holder the principal sum of one hundred eighty two thousand six hundred dollars ($182,600.00) with interest on any unpaid balance thereof at the rate of 1.75% per annum ("Interest Rate") (which is equal to or exceeds the applicable Federal Rate) on the balance remaining from time to time unpaid. The interest rate on this loan is determined as of the date of execution of this Note and shall remain fixed for the duration of the loan. Payments of principal and interest shall be due and payable in the amounts and on the dates provided for hereafter. Accrued interest shall be due and payable at the same time that principal installments are due and payable. Payment of principal shall be made as follows on the following "Payment Dates":

$22,825.00 on January 2, 2015

$22,825.00 on January 2, 2016

$22,825.00 on January 2, 2017

$22,825.00 on January 2, 2018

$22,825.00 on January 2, 2019

$22,825.00 on January 2, 2020

$22,825.00 on January 2, 2021

$22,825.00 on January 2, 2022

By signing this Note, Borrower expressly agrees, authorizes and directs Notes Holdings, or any of its affiliates, subsidiaries, successors, designees or assigns, including but not limited to Morgan Stanley Smith Barney LLC d/b/a Morgan Stanley Wealth Management ("Morgan Stanley") (collectively, the "Authorized Parties"), to deduct on each Payment Date the annual installment payment from any securities account that Borrower maintains with the Authorized Parties, either individually or jointly with another person, and to deliver such deduction to the Note Holder with a direction to apply it to the outstanding amount then owed under this Note. If the deduction from the securities account of the Borrower is not sufficient, then the Borrower shall pay the outstanding amount by check. Should full payment by the Borrower not be made by such deduction and/or check within ten (10) business days following the applicable Payment Date, Borrower

Exhibit 5
Page 42

CONFIDENTIAL                    HYSLOP-MS-00000037

CONFIDENTIAL                    MSSB-GT(Hyslop)-000484

expressly agrees, authorizes and directs the Authorized Parties to deduct such payment from any Compensation (as defined below) owed to Borrower from the Authorized Parties, and to deliver such deduction to the Note Holder with a direction to apply it to the indebtedness hereunder. Payments received by the Note Holder shall be applied first to any accrued and unpaid interest due on this Note and then to the unpaid principal. For purposes of this Note, the term "Compensation" shall mean all bonuses, commissions, incentive compensation, and any other remuneration paid to Borrower by an Authorized Party, but shall not include Borrower's salary for services actually rendered. Notwithstanding any authority to recover against Borrower contained in this Note, there shall be no authority to accelerate the payment or settlement of any Compensation that constitutes a deferral of compensation for purposes of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), except to the extent that such acceleration would not cause Borrower to recognize income for United States federal income tax purposes prior to the time of payment or settlement of the compensation or to incur interest or additional tax under Section 409A.

The Note Holder is not limited to recovering any amounts due and payable under this Note (including interest) from any securities account that Borrower maintains with the Authorized Parties or Compensation payable to Borrower from the Authorized Parties and can recover all such amounts loaned to Borrower, plus interest, as full recourse obligations of Borrower. As a result, Borrower shall be personally liable for payment of this Note, and any and all assets of Borrower, wherever located throughout the world, may be applied to the satisfaction of Borrower's obligations hereunder.

All amounts outstanding under the Note shall automatically be, and become, immediately due and payable, without notice or demand, (i) if the Borrower's employment with an Authorized Party terminates voluntarily or involuntarily for any reason or no reason whatsoever, including by reason of death, total or permanent disability, or retirement, (ii) if the Borrower fails to maintain all licenses and registrations from the Financial Industry Regulatory Authority, and such other exchanges, state securities commissions and other regulatory bodies as the Authorized Parties shall determine are necessary for Borrower to possess in order to conduct securities or commodities transactions, (iii) if the Borrower fails to fully pay the principal and interest due for any Payment Date within seventy-five (75) days following any such Payment Date, or (iv) upon the filing of a voluntary or involuntary petition by or against the Borrower under any provision of any Federal or State bankruptcy or similar laws, any assignment by Borrower for the benefit of creditors, the entry of judgment or issuance of an order of attachment or garnishment against the Borrower, or the commencement of any proceedings or procedure for enforcement of a money judgment against the Borrower. Each of the items designated (i) through (iv) are hereinafter referred to as "Acceleration Events." Upon the happening of any of the Acceleration Events, the Borrower shall be deemed to be in Default on the Note and any outstanding balance due on this Note will become immediately due and payable, together with interest accruing from the date of Default, at the Interest Rate plus 4% per annum. In the event of Default, an Authorized Party may report information about your account to credit bureaus. The Borrower hereby waives presentment, demand for payment, protest or notice of any kind in connection with this Note.

The Borrower may prepay, without premium or penalty, all or any portion of the aggregate principal

Exhibit 5
Page 43

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000038
MSSB-GT(Hyslop)-000485

amount of the obligations due hereunder. Any such prepayment shall include all accrued and unpaid interest on the principal sum being repaid and shall be applied in chronologically inverse order of amortization.

Borrower understands and agrees that no portion of the proceeds of any loan offered pursuant to Morgan Stanley's Portfolio Loan Account ("PLA") program or any similar program offered by any of the Authorized Parties may be used to repay any amounts due and payable under this Note.

Borrower understands, agrees and directs the Authorized Parties that in the event the Borrower defaults in any payment or a portion of any payment due hereunder, the Authorized Parties, as agents of the Note Holder, shall have the right, without notice, and to the maximum extent permitted by applicable law, to take steps necessary or appropriate to enforce and/or ensure compliance with any of the terms or conditions of the Note, including, but not limited to, bringing legal action as contemplated hereunder to recover all amounts outstanding hereunder and/or withholding from any and all Compensation, securities, property of the Borrower or such other amounts due or held in an account for the undersigned at Morgan Stanley or any of its respective affiliates (or successors), an amount equal to all amounts outstanding hereunder and to deliver such withheld amounts to the Note Holder with a direction to apply such amounts to the indebtedness hereunder.

Borrower hereby agrees to indemnify and hold harmless (to the fullest extent permitted by applicable law), and to reimburse, the Note Holder and any Authorized Party and their respective affiliates, subsidiaries, officers, directors, employees, agents, controlling persons, successors, designees, and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any liabilities, losses, damages, costs, expenses (including attorneys' fees), actions, suits, judgments or investigative or administrative proceedings ("Liabilities"), other than Liabilities arising as a result of the Note Holder's or Authorized Party's gross negligence or willful misconduct, that may be suffered or incurred by any such indemnified person in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provisions of this Note shall not affect the legality, validity or enforceability of the remaining provisions hereof. No previous waiver and no failure or delay by the Note Holder or Authorized Party in acting with respect to the terms of this Note shall constitute a waiver of any breach, default or failure of condition under this Note. A waiver of any term of this Note or any of the obligations secured thereby must be made in writing by a duly-authorized officer of the Note Holder and shall be limited to the express terms of such waiver. Borrower agrees to make all payments under this Note without set-off or deduction and regardless of any counterclaim or defense.

This Note is not a contract of employment for any period of time. Borrower's employment with Morgan Stanley, the Authorized Party or any of its affiliates or related entities, as applicable, is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term and Borrower's

Exhibit 5
Page 44

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000039
MSSB-GT(Hyslop)-000486

employment can be terminated at any time for any reason or no reason.

This Note shall be binding, in the event of Borrower's death, on Borrower's estate, including, but not limited to, Borrower's personal representatives, heirs, legatees, and executors. This Note shall inure to the benefit of the Note Holder. Note Holder retains the right to assign its rights, title and interest in this Note as it may elect. Borrower expressly consents to any such, or any subsequent, assignment by Note Holder or any successor to Note Holder. Borrower may not assign or transfer this Note or any of Borrower's obligations hereunder.

It is the intention of the Note Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated as described above, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date hereof until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the Note Holder either be rebated to Borrower or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to Borrower. The aggregate of all interest (whether designated as interest) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal balance of this Note remaining unpaid from time to time. If such interest does exceed the maximum legal rate, it shall be deemed a mistake and such excess shall be canceled automatically and, if theretofore paid, rebated to Borrower or credited on the principal amount of this Note, or if this Note has been repaid, then such excess shall be rebated to Borrower.

All notices, requests, demands and other communications to be given to the Borrower pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the Borrower's last known address or such other address as the Borrower shall have designated by notice in writing to the Note Holder, or any successor thereto, in accordance with this paragraph. All notices, requests, demands and other communications to be given to the Note Holder pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the address set forth in the corporate records or such other address as the Note Holder shall have designated by notice in writing to Borrower in accordance with this paragraph.

Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Borrower expressly acknowledges and agrees that Note Holder or any Authorized Party or their respective affiliates, subsidiaries, successors, designees, and assigns, including, but not limited to Morgan Stanley, may commence FINRA arbitration proceedings as contemplated hereunder to enforce the terms and conditions of this Note,

Exhibit 5
Page 45

and expressly waives any right to assert in opposition to any claim by Note Holder or any Authorized Party that said claimant(s) lack standing to commence FINRA arbitration proceedings. To the fullest extent permitted by law, Borrower expressly waives the right to assert a counterclaim in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note. Borrower expressly agrees that any such counterclaim shall only be made by Borrower in a separate arbitration proceeding. The foregoing does not preclude Borrower from asserting a valid defense, if any, in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note.

No modification of this Note shall be binding or enforceable unless in a writing signed by the Note Holder, or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns thereto, and Borrower. Notwithstanding the foregoing, the Note Holder retains the right to make modifications to this Note that it deems advisable, in its sole discretion, to allow it, its parents, and/or its affiliates to comply with or satisfy any applicable legal, regulatory, or governmental requirements or to qualify for any government loan, subsidy, or other programs.

This Note contains the entire agreement and understanding of the parties with respect to the loan evidenced by this Note, and this Note supersedes all prior communications, representations and negotiations with respect thereto. In the event of any inconsistencies between the terms of this Note and the terms of any other document related to the loan evidenced by the Note, the terms of this Note shall control.

By executing this Note, Borrower expressly acknowledges and agrees that this Note does not constitute a bonus or any other form of compensation, and if Borrower voluntarily terminates Borrower's employment with the Authorized Party or is terminated by the Authorized Party for any reason or no reason, or if one of the other circumstances described in the Note occurs, all outstanding principal and accrued interest under the Note will become immediately due and payable to the Note Holder.

BORROWER

Signature - Ryan Hyslop                           1-2-2014
                                                   Date

Exhibit 5
Page 46

CONFIDENTIAL                    CONFIDENTIAL

HYSLOP-MS-00000041
MSSB-GT(Hyslop)-000488

# EXHIBIT 6

Exhibit 6
Page 47

MORGAN STANLEY SMITH BARNEY FA NOTES HOLDINGS LLC        PROMISSORY NOTE

$315,398.51            STATELINE , NV                        January 27, 2016
(AMOUNT)           (CITY AND STATE)                          (DATE)

     Subject to deposit, the undersigned ("Borrower") hereby affirms and acknowledges his/her
indebtedness to Morgan Stanley Smith Barney FA Notes Holdings LLC ("Notes Holdings"), at (branch
address) 276 Kingsbury Grove, P Box 6060 Stateline, NV 89449, or any subsequent holder of this Promissory Note (the "Note
Holder") for the entire amount indicated above, plus accrued interest. The loan proceeds shall be
deposited into Borrower's employee account with Morgan Stanley Smith Barney LLC.

     In connection with the aforementioned, the Borrower promises to pay to the Note Holder the
principal sum of three hundred fifteen thousand three hundred ninety-eight dollars and fifty-one cents
($315,398.51) with interest on any unpaid balance thereof at the rate of 1.25% per annum ("Interest Rate")
(which is equal to or exceeds the applicable Federal Rate) on the balance remaining from time to time
unpaid. The interest rate on this loan is determined as of the date of execution of this Note and shall
remain fixed for the duration of the loan. Payments of principal and interest shall be due and payable in the
amounts and on the dates provided for hereafter. Accrued interest shall be due and payable at the same
time that principal installments are due and payable. Payment of principal shall be made as follows on the
following "Payment Dates":

$45,056.93 on January 27, 2017

$45,056.93 on January 27, 2018

$45,056.93 on January 27, 2019

$45,056.93 on January 27, 2020

$45,056.93 on January 27, 2021

$45,056.93 on January 27, 2022

$45,056.93 on January 27, 2023

     By signing this Note, Borrower expressly agrees, authorizes and directs Notes Holdings, or any of
its affiliates, subsidiaries, successors, designees or assigns, including but not limited to Morgan Stanley
Smith Barney LLC d/b/a Morgan Stanley Wealth Management ("Morgan Stanley") (collectively, the
"Authorized Parties"), to deduct on each Payment Date the annual installment payment from any
securities account that Borrower maintains with the Authorized Parties, either individually or jointly with
another person, and to deliver such deduction to the Note Holder with a direction to apply it to the
outstanding amount then owed under this Note. If the deduction from the securities account of the
Borrower is not sufficient, then the Borrower shall pay the outstanding amount by check. Should full
payment by the Borrower not be made by such deduction and/or check within ten (10) business days

Exhibit 6
Page 48

CONFIDENTIAL                        CONFIDENTIAL                    HYSLOP-MS-00000046
                                                                   MSSB-GT(Hyslop)-000493

following the applicable Payment Date, Borrower expressly agrees, authorizes and directs the Authorized Parties to deduct such payment from any Compensation (as defined below) owed to Borrower from the Authorized Parties, and to deliver such deduction to the Note Holder with a direction to apply it to the indebtedness hereunder. Payments received by the Note Holder shall be applied first to any accrued and unpaid interest due on this Note and then to the unpaid principal. For purposes of this Note, the term "Compensation" shall mean all bonuses, commissions, incentive compensation, and any other remuneration paid to Borrower by an Authorized Party, but shall not include Borrower's salary for services actually rendered. Notwithstanding any authority to recover against Borrower contained in this Note, there shall be no authority to accelerate the payment or settlement of any Compensation that constitutes a deferral of compensation for purposes of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), except to the extent that such acceleration would not cause Borrower to recognize income for United States federal income tax purposes prior to the time of payment or settlement of the compensation or to incur interest or additional tax under Section 409A.

The Note Holder is not limited to recovering any amounts due and payable under this Note (including interest) from any securities account that Borrower maintains with the Authorized Parties or Compensation payable to Borrower from the Authorized Parties and can recover all such amounts loaned to Borrower, plus interest, as full recourse obligations of Borrower. As a result, Borrower shall be personally liable for payment of this Note, and any and all assets of Borrower, wherever located throughout the world, may be applied to the satisfaction of Borrower's obligations hereunder.

All amounts outstanding under the Note shall automatically be, and become, immediately due and payable, without notice or demand, (i) if the Borrower's employment with an Authorized Party terminates voluntarily or involuntarily for any reason or no reason whatsoever, including by reason of death, total or permanent disability, or retirement, (ii) if the Borrower fails to maintain all licenses and registrations from the Financial Industry Regulatory Authority, and such other exchanges, state securities commissions and other regulatory bodies as the Authorized Parties shall determine are necessary for Borrower to possess in order to conduct securities or commodities transactions, (iii) if the Borrower fails to fully pay the principal and interest due for any Payment Date within seventy-five (75) days following any such Payment Date, or (iv) upon the filing of a voluntary or involuntary petition by or against the Borrower under any provision of any Federal or State bankruptcy or similar laws, any assignment by Borrower for the benefit of creditors, the entry of judgment or issuance of an order of attachment or garnishment against the Borrower, or the commencement of any proceedings or procedure for enforcement of a money judgment against the Borrower. Each of the items designated (i) through (iv) are hereinafter referred to as "Acceleration Events." Upon the happening of any of the Acceleration Events, the Borrower shall be deemed to be in Default on the Note and any outstanding balance due on this Note will become immediately due and payable, together with interest accruing from the date of Default, at the Interest Rate plus 4% per annum. In the event of Default, an Authorized Party may report information about your account to credit bureaus. The Borrower hereby waives presentment, demand for payment, protest or notice of any kind in connection with this Note.

Exhibit 6
Page 49

CONFIDENTIAL

CONFIDENTIAL

The Borrower may prepay, without premium or penalty, all or any portion of the aggregate principal amount of the obligations due hereunder. Any such prepayment shall include all accrued and unpaid interest on the principal sum being repaid and shall be applied in chronological inverse order of amortization.

Borrower understands and agrees that no portion of the proceeds of any loan offered pursuant to Morgan Stanley's Portfolio Loan Account ("PLA") program or any similar program offered by any of the Authorized Parties may be used to repay any amounts due and payable under this Note.

Borrower understands, agrees and directs the Authorized Parties that in the event the Borrower defaults in any payment or a portion of any payment due hereunder, the Authorized Parties, as agents of the Note Holder, shall have the right, without notice, and to the maximum extent permitted by applicable law, to take steps necessary or appropriate to enforce and/or ensure compliance with any of the terms or conditions of the Note, including, but not limited to, bringing legal action as contemplated hereunder to recover all amounts outstanding hereunder and/or withholding from any and all Compensation, securities, property of the Borrower or such other amounts due or held in an account for the undersigned at Morgan Stanley or any of its respective affiliates (or successors), an amount equal to all amounts outstanding hereunder and to deliver such withheld amounts to the Note Holder with a direction to apply such amounts to the indebtedness hereunder.

Borrower hereby agrees to indemnify and hold harmless (to the fullest extent permitted by applicable law), and to reimburse, the Note Holder and any Authorized Party and their respective affiliates, subsidiaries, officers, directors, employees, agents, controlling persons, successors, designees, and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any liabilities, losses, damages, costs, expenses (including attorneys' fees), actions, suits, judgments or investigative or administrative proceedings ("Liabilities"), other than Liabilities arising as a result of the Note Holder's or Authorized Party's gross negligence or willful misconduct, that may be suffered or incurred by any such indemnified person in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provisions of this Note shall not affect the legality, validity or enforceability of the remaining provisions hereof. No previous waiver and no failure or delay by the Note Holder or Authorized Party in acting with respect to the terms of this Note shall constitute a waiver of any breach, default or failure of condition under this Note. A waiver of any term of this Note or any of the obligations secured thereby must be made in writing by a duly-authorized officer of the Note Holder and shall be limited to the express terms of such waiver. Borrower agrees to make all payments under this Note without set-off or deduction and regardless of any counterclaim or defense.

This Note is not a contract of employment for any period of time. Borrower's employment with

Exhibit 6
Page 50

CONFIDENTIAL

CONFIDENTIAL

Morgan Stanley, the Authorized Party or any of its affiliates or related entities, as applicable, is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term and Borrower's employment can be terminated at any time for any reason or no reason.

This Note shall be binding, in the event of Borrower's death, on Borrower's estate, including, but not limited to, Borrower's personal representatives, heirs, legatees, and executors. This Note shall inure to the benefit of the Note Holder. Note Holder retains the right to assign its rights, title and interest in this Note as it may elect. Borrower expressly consents to any such, or any subsequent, assignment by Note Holder or any successor to Note Holder. Borrower may not assign or transfer this Note or any of Borrower's obligations hereunder.

It is the intention of the Note Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated as described above, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date hereof until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the Note Holder either be rebated to Borrower or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to Borrower. The aggregate of all interest (whether designated as interest) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal balance of this Note remaining unpaid from time to time. If such interest does exceed the maximum legal rate, it shall be deemed a mistake and such excess shall be canceled automatically and, if theretofore paid, rebated to Borrower or credited on the principal amount of this Note, or if this Note has been repaid, then such excess shall be rebated to Borrower.

All notices, requests, demands and other communications to be given to the Borrower pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the Borrower's last known address or such other address as the Borrower shall have designated by notice in writing to the Note Holder, or any successor thereto, in accordance with this paragraph. All notices, requests, demands and other communications to be given to the Note Holder pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the address set forth in the corporate records or such other address as the Note Holder shall have designated by notice in writing to Borrower in accordance with this paragraph.

Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Borrower expressly acknowledges and agrees that Note Holder or any Authorized Party or their respective affiliates,

Exhibit 6
Page 51

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000049
MSSB-GT(Hyslop)-000496

subsidiaries, successors, designees, and assigns, including, but not limited to Morgan Stanley, may commence FINRA arbitration proceedings as contemplated hereunder to enforce the terms and conditions of this Note, and expressly waives any right to assert in opposition to any claim by Note Holder or any Authorized Party that said claimant(s) lack standing to commence FINRA arbitration proceedings. To the fullest extent permitted by law, Borrower expressly waives the right to assert a counterclaim in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note. Borrower expressly agrees that any such counterclaim shall only be made by Borrower in a separate arbitration proceeding. The foregoing does not preclude Borrower from asserting a valid defense, if any, in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note.

No modification of this Note shall be binding or enforceable unless in a writing signed by the Note Holder, or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns thereto, and Borrower. Notwithstanding the foregoing, the Note Holder retains the right to make modifications to this Note that it deems advisable, in its sole discretion, to allow it, its parents, and/or its affiliates to comply with or satisfy any applicable legal, regulatory, or governmental requirements or to qualify for any government loan, subsidy, or other programs.

This Note contains the entire agreement and understanding of the parties with respect to the loan evidenced by this Note, and this Note supersedes all prior communications, representations and negotiations with respect thereto. In the event of any inconsistencies between the terms of this Note and the terms of any other document related to the loan evidenced by the Note, the terms of this Note shall control.

By executing this Note, Borrower expressly acknowledges and agrees that this Note does not constitute a bonus or any other form of compensation, and if Borrower voluntarily terminates Borrower's employment with the Authorized Party or is terminated by the Authorized Party for any reason or no reason, or if one of the other circumstances described in the Note occurs, all outstanding principal and accrued interest under the Note will become immediately due and payable to the Note Holder.

BORROWER

Signature - Ryan Hyslop                  Date    1/28/16

Exhibit 6
Page 52

CONFIDENTIAL                    CONFIDENTIAL          HYSLOP-MS-00000050
                                                      MSSB-GT(Hyslop)-000497

# EXHIBIT 7

Exhibit 7
Page 53

MORGAN STANLEY SMITH BARNEY FA NOTES HOLDINGS LLC          PROMISSORY NOTE

$353,761.88          _Stateline    NV_          January 17, 2017

(AMOUNT)          (CITY AND STATE)          (DATE)

Subject to deposit, the undersigned ("Borrower") hereby affirms and acknowledges his/her indebtedness to Morgan Stanley Smith Barney FA Notes Holdings LLC ("Notes Holdings"), at (branch address) _276 Kingsbury Grade_____, or any subsequent holder of this Promissory Note (the "Note Holder") for the entire amount indicated above, plus accrued interest. The loan proceeds shall be deposited into Borrower's employee account with Morgan Stanley Smith Barney LLC.

In connection with the aforementioned, the Borrower promises to pay to the Note Holder the principal sum of three hundred fifty three thousand seven hundred sixty one dollars and eighty eight cents ($353,761.88) with interest on any unpaid balance thereof at the rate of 2.00% per annum ("Interest Rate") (which is equal to or exceeds the applicable Federal Rate) on the balance remaining from time to time unpaid. The interest rate on this loan is determined as of the date of execution of this Note and shall remain fixed for the duration of the loan. Payments of principal and interest shall be due and payable in the amounts and on the dates provided for hereafter. Accrued interest shall be due and payable at the same time that principal installments are due and payable. Payment of principal shall be made as follows on the following "Payment Dates":

$58,960.31 on January 17, 2018
$58,960.31 on January 17, 2019
$58,960.31 on January 17, 2020
$58,960.31 on January 17, 2021
$58,960.31 on January 17, 2022
$58,960.31 on January 17, 2023

By signing this Note, Borrower expressly agrees, authorizes and directs Notes Holdings, or any of its affiliates, subsidiaries, successors, designees or assigns, including but not limited to Morgan Stanley Smith Barney LLC d/b/a Morgan Stanley Wealth Management ("Morgan Stanley") (collectively, the "Authorized Parties"), to deduct on each Payment Date the annual installment payment from any securities account that Borrower maintains with the Authorized Parties, either individually or jointly with another person, and to deliver such deduction to the Note Holder with a direction to apply it to the outstanding amount then owed under this Note. If the deduction from the securities account of the Borrower is not sufficient, then the Borrower shall pay the outstanding amount by check. Should full payment by the Borrower not be made by such deduction and/or check within ten (10) business days following the applicable Payment Date, Borrower expressly agrees, authorizes and directs the

Exhibit 7
Page 54

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000055
MSSB-GT(Hyslop)-000502

Authorized Parties to deduct such payment from any Compensation (as defined below) owed to Borrower from the Authorized Parties, and to deliver such deduction to the Note Holder with a direction to apply it to the indebtedness hereunder. Payments received by the Note Holder shall be applied first to any accrued and unpaid interest due on this Note and then to the unpaid principal. For purposes of this Note, the term "Compensation" shall mean all bonuses, commissions, incentive compensation, and any other remuneration paid to Borrower by an Authorized Party, but shall not include Borrower's salary for services actually rendered. Notwithstanding any authority to recover against Borrower contained in this Note, there shall be no authority to accelerate the payment or settlement of any Compensation that constitutes a deferral of compensation for purposes of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), except to the extent that such acceleration would not cause Borrower to recognize income for United States federal income tax purposes prior to the time of payment or settlement of the compensation or to incur interest or additional tax under Section 409A.

The Note Holder is not limited to recovering any amounts due and payable under this Note (including interest) from any securities account that Borrower maintains with the Authorized Parties or Compensation payable to Borrower from the Authorized Parties and can recover all such amounts loaned to Borrower, plus interest, as full recourse obligations of Borrower. As a result, Borrower shall be personally liable for payment of this Note, and any and all assets of Borrower, wherever located throughout the world, may be applied to the satisfaction of Borrower's obligations hereunder.

All amounts outstanding under the Note shall automatically be, and become, immediately due and payable, without notice or demand, (i) if the Borrower's employment with an Authorized Party terminates voluntarily or involuntarily for any reason or no reason whatsoever, including by reason of death, total or permanent disability, or retirement, (ii) if the Borrower fails to maintain all licenses and registrations from the Financial Industry Regulatory Authority, and such other exchanges, state securities commissions and other regulatory bodies as the Authorized Parties shall determine are necessary for Borrower to possess in order to conduct securities or commodities transactions, (iii) if the Borrower fails to fully pay the principal and interest due for any Payment Date within seventy-five (75) days following any such Payment Date, or (iv) upon the filing of a voluntary or involuntary petition by or against the Borrower under any provision of any Federal or State bankruptcy or similar laws, any assignment by Borrower for the benefit of creditors, the entry of judgment or issuance of an order of attachment or garnishment against the Borrower, or the commencement of any proceedings or procedure for enforcement of a money judgment against the Borrower. Each of the items designated (i) through (iv) are hereinafter referred to as "Acceleration Events." Upon the happening of any of the Acceleration Events, the Borrower shall be deemed to be in Default on the Note and any outstanding balance due on this Note will become immediately due and payable, together with interest accruing from the date of Default, at the Interest Rate plus 4% per annum. In the event of Default, an Authorized Party may report information about your account to credit bureaus. The Borrower hereby waives presentment, demand for payment, protest or notice of any kind in connection with this Note.

The Borrower may prepay, without premium or penalty, all or any portion of the aggregate

Exhibit 7
Page 55

principal amount of the obligations due hereunder. Any such prepayment shall include all accrued and unpaid interest on the principal sum being repaid and shall be applied in chronologically inverse order of amortization.

Borrower understands and agrees that no portion of the proceeds of any loan offered pursuant to Morgan Stanley's Portfolio Loan Account ("PLA") program or any similar program offered by any of the Authorized Parties may be used to repay any amounts due and payable under this Note.

Borrower understands, agrees and directs the Authorized Parties that in the event the Borrower defaults in any payment or a portion of any payment due hereunder, the Authorized Parties, as agents of the Note Holder, shall have the right, without notice, and to the maximum extent permitted by applicable law, to take steps necessary or appropriate to enforce and/or ensure compliance with any of the terms or conditions of the Note, including, but not limited to, bringing legal action as contemplated hereunder to recover all amounts outstanding hereunder and/or withholding from any and all Compensation, securities, property of the Borrower or such other amounts due or held in an account for the undersigned at Morgan Stanley or any of its respective affiliates (or successors), an amount equal to all amounts outstanding hereunder and to deliver such withheld amounts to the Note Holder with a direction to apply such amounts to the indebtedness hereunder.

Borrower hereby agrees to indemnify and hold harmless (to the fullest extent permitted by applicable law), and to reimburse, the Note Holder and any Authorized Party and their respective affiliates, subsidiaries, officers, directors, employees, agents, controlling persons, successors, designees, and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any liabilities, losses, damages, costs, expenses (including attorneys' fees), actions, suits, judgments or investigative or administrative proceedings ("Liabilities"), other than Liabilities arising as a result of the Note Holder's or Authorized Party's gross negligence or willful misconduct, that may be suffered or incurred by any such indemnified person in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provisions of this Note shall not affect the legality, validity or enforceability of the remaining provisions hereof. No previous waiver and no failure or delay by the Note Holder or Authorized Party in acting with respect to the terms of this Note shall constitute a waiver of any breach, default or failure of condition under this Note. A waiver of any term of this Note or any of the obligations secured thereby must be made in writing by a duly-authorized officer of the Note Holder and shall be limited to the express terms of such waiver. Borrower agrees to make all payments under this Note without set-off or deduction and regardless of any counterclaim or defense.

This Note is not a contract of employment for any period of time. Borrower's employment with

Exhibit 7
Page 56

CONFIDENTIAL

Morgan Stanley, the Authorized Party or any of its affiliates or related entities, as applicable, is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term and Borrower's employment can be terminated at any time for any reason or no reason.

This Note shall be binding, in the event of Borrower's death, on Borrower's estate, including, but not limited to, Borrower's personal representatives, heirs, legatees, and executors. This Note shall inure to the benefit of the Note Holder. Note Holder retains the right to assign its rights, title and interest in this Note as it may elect. Borrower expressly consents to any such, or any subsequent, assignment by Note Holder or any successor to Note Holder. Borrower may not assign or transfer this Note or any of Borrower's obligations hereunder.

It is the intention of the Note Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated as described above, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date hereof until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the Note Holder either be rebated to Borrower or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to Borrower. The aggregate of all interest (whether designated as interest) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal balance of this Note remaining unpaid from time to time. If such interest does exceed the maximum legal rate, it shall be deemed a mistake and such excess shall be canceled automatically and, if theretofore paid, rebated to Borrower or credited on the principal amount of this Note, or if this Note has been repaid, then such excess shall be rebated to Borrower.

All notices, requests, demands and other communications to be given to the Borrower pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the Borrower's last known address or such other address as the Borrower shall have designated by notice in writing to the Note Holder, or any successor thereto, in accordance with this paragraph. All notices, requests, demands and other communications to be given to the Note Holder pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the address set forth in the corporate records or such other address as the Note Holder shall have designated by notice in writing to Borrower in accordance with this paragraph.

Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Borrower

Exhibit 7
Page 57

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000058
MSSB-GT(Hyslop)-000505

expressly acknowledges and agrees that Note Holder or any Authorized Party or their respective affiliates, subsidiaries, successors, designees, and assigns, including, but not limited to Morgan Stanley, may commence FINRA arbitration proceedings as contemplated hereunder to enforce the terms and conditions of this Note, and expressly waives any right to assert in opposition to any claim by Note Holder or any Authorized Party that said claimant(s) lack standing to commence FINRA arbitration proceedings. To the fullest extent permitted by law, Borrower expressly waives the right to assert a counterclaim in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note. Borrower expressly agrees that any such counterclaim shall only be made by Borrower in a separate arbitration proceeding. The foregoing does not preclude Borrower from asserting a valid defense, if any, in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note.

No modification of this Note shall be binding or enforceable unless in a writing signed by the Note Holder, or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns thereto, and Borrower. Notwithstanding the foregoing, the Note Holder retains the right to make modifications to this Note that it deems advisable, in its sole discretion, to allow it, its parents, and/or its affiliates to comply with or satisfy any applicable legal, regulatory, or governmental requirements or to qualify for any government loan, subsidy, or other programs.

This Note contains the entire agreement and understanding of the parties with respect to the loan evidenced by this Note, and this Note supersedes all prior communications, representations and negotiations with respect thereto. In the event of any inconsistencies between the terms of this Note and the terms of any other document related to the loan evidenced by the Note, the terms of this Note shall control.

By executing this Note, Borrower expressly acknowledges and agrees that this Note does not constitute a bonus or any other form of compensation, and if Borrower voluntarily terminates Borrower's employment with the Authorized Party or is terminated by the Authorized Party for any reason or no reason, or if one of the other circumstances described in the Note occurs, all outstanding principal and accrued interest under the Note will become immediately due and payable to the Note Holder.

BORROWER

_____
Signature - Ryan Hyslop

_____
Date

Exhibit 7
Page 58

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000059
MSSB-GT(Hyslop)-000506

# EXHIBIT 8

Exhibit 8
Page 59

MORGAN STANLEY SMITH BARNEY FA NOTES HOLDINGS LLC          PROMISSORY NOTE

| $459,513.37 | _RENO, NV_ | January 26, 2018 |
|---|---|---|
| (AMOUNT) | (CITY AND STATE) | (DATE) |

Subject to deposit, the undersigned ("Borrower") hereby affirms and acknowledges his/her indebtedness to Morgan Stanley Smith Barney FA Notes Holdings LLC ("Notes Holdings"), at (branch address) _RENO, NV_____, or any subsequent holder of this Promissory Note (the "Note Holder") for the entire amount indicated above, plus accrued interest. The loan proceeds shall be deposited into Borrower's employee account with Morgan Stanley Smith Barney LLC.

In connection with the aforementioned, the Borrower promises to pay to the Note Holder the principal sum of four hundred fifty nine thousand five hundred thirteen dollars and thirty seven cents ($459,513.37) with interest on any unpaid balance thereof at the rate of 2.25% per annum ("Interest Rate") (which is equal to or exceeds the applicable Federal Rate) on the balance remaining from time to time unpaid. The interest rate on this loan is determined as of the date of execution of this Note and shall remain fixed for the duration of the loan. Payments of principal and interest shall be due and payable in the amounts and on the dates provided for hereafter. Accrued interest shall be due and payable at the same time that principal installments are due and payable. Payment of principal shall be made as follows on the following "Payment Dates":

$91,902.67 on January 26, 2019

$91,902.67 on January 26, 2020

$91,902.67 on January 26, 2021

$91,902.67 on January 26, 2022

$91,902.67 on January 26, 2023

By signing this Note, Borrower expressly agrees, authorizes and directs Notes Holdings, or any of its affiliates, subsidiaries, successors, designees or assigns, including but not limited to Morgan Stanley Smith Barney LLC d/b/a Morgan Stanley Wealth Management ("Morgan Stanley") (collectively, the "Authorized Parties"), to deduct on each Payment Date the annual installment payment from any securities account that Borrower maintains with the Authorized Parties, either individually or jointly with another person, and to deliver such deduction to the Note Holder with a direction to apply it to the outstanding amount then owed under this Note. If the deduction from the securities account of the Borrower is not sufficient, then the Borrower shall pay the outstanding amount by check. Should full payment by the Borrower not be made by such deduction and/or check within ten (10) business days following the applicable Payment Date, Borrower expressly agrees, authorizes and directs the Authorized Parties to deduct such payment from any Compensation (as defined below) owed to Borrower from the Authorized Parties, and to deliver such deduction to the Note Holder with a direction to apply it to the indebtedness hereunder. Payments received by the Note Holder shall be applied first to any accrued and unpaid interest due on this Note and then to the unpaid principal. For purposes of this Note, the term "Compensation" shall mean all bonuses, commissions, incentive compensation, and any other remuneration paid to Borrower by an Authorized Party, but shall not include Borrower's salary for services actually rendered. Notwithstanding any authority to recover against Borrower contained in this Note, there shall be no authority to accelerate the payment or settlement of any

Exhibit 8
Page 60

Compensation that constitutes a deferral of compensation for purposes of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), except to the extent that such acceleration would not cause Borrower to recognize income for United States federal income tax purposes prior to the time of payment or settlement of the compensation or to incur interest or additional tax under Section 409A.

The Note Holder is not limited to recovering any amounts due and payable under this Note (including interest) from any securities account that Borrower maintains with the Authorized Parties or Compensation payable to Borrower from the Authorized Parties and can recover all such amounts loaned to Borrower, plus interest, as full recourse obligations of Borrower. As a result, Borrower shall be personally liable for payment of this Note, and any and all assets of Borrower, wherever located throughout the world, may be applied to the satisfaction of Borrower's obligations hereunder.

All amounts outstanding under the Note shall automatically be, and become, immediately due and payable, without notice or demand, (i) if the Borrower's employment with an Authorized Party terminates voluntarily or involuntarily for any reason or no reason whatsoever, including by reason of death, total or permanent disability, or retirement, (ii) if the Borrower fails to maintain all licenses and registrations from the Financial Industry Regulatory Authority, and such other exchanges, state securities commissions and other regulatory bodies as the Authorized Parties shall determine are necessary for Borrower to possess in order to conduct securities or commodities transactions, (iii) if the Borrower fails to fully pay the principal and interest due for any Payment Date within seventy-five (75) days following any such Payment Date, or (iv) upon the filing of a voluntary or involuntary petition by or against the Borrower under any provision of any Federal or State bankruptcy or similar laws, any assignment by Borrower for the benefit of creditors, the entry of judgment or issuance of an order of attachment or garnishment against the Borrower, or the commencement of any proceedings or procedure for enforcement of a money judgment against the Borrower. Each of the items designated (i) through (iv) are hereinafter referred to as "Acceleration Events." Upon the happening of any of the Acceleration Events, the Borrower shall be deemed to be in Default on the Note and any outstanding balance due on this Note will become immediately due and payable, together with interest accruing from the date of Default, at the Interest Rate plus 4% per annum. In the event of Default, an Authorized Party may report information about your account to credit bureaus. The Borrower hereby waives presentment, demand for payment, protest or notice of any kind in connection with this Note.

The Borrower may prepay, without premium or penalty, all or any portion of the aggregate principal amount of the obligations due hereunder. Any such prepayment shall include all accrued and unpaid interest on the principal sum being repaid and shall be applied in chronologically inverse order of amortization.

Borrower understands and agrees that no portion of the proceeds of any loan offered pursuant to Morgan Stanley's Portfolio Loan Account ("PLA") program or any similar program offered by any of the Authorized Parties may be used to repay any amounts due and payable under this Note.

Borrower understands, agrees and directs the Authorized Parties that in the event the Borrower defaults in any payment or a portion of any payment due hereunder, the Authorized Parties, as agents of the Note Holder, shall have the right, without notice, and to the maximum extent permitted by applicable law, to take steps necessary or appropriate to enforce and/or ensure compliance with any of the terms or conditions of the Note, including, but not limited to, bringing legal action as contemplated hereunder to recover all amounts outstanding hereunder and/or withholding from any and all Compensation, securities, property of the

Exhibit 8
Page 61

CONFIDENTIAL

HYSLOP-MS-00000065
MSSB-GT(Hyslop)-000512

Borrower or such other amounts due or held in an account for the undersigned at Morgan Stanley or any of its respective affiliates (or successors), an amount equal to all amounts outstanding hereunder and to deliver such withheld amounts to the Note Holder with a direction to apply such amounts to the indebtedness hereunder.

Borrower hereby agrees to indemnify and hold harmless (to the fullest extent permitted by applicable law), and to reimburse, the Note Holder and any Authorized Party and their respective affiliates, subsidiaries, officers, directors, employees, agents, controlling persons, successors, designees, and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any liabilities, losses, damages, costs, expenses (including attorneys' fees), actions, suits, judgments or investigative or administrative proceedings ("Liabilities"), other than Liabilities arising as a result of the Note Holder's or Authorized Party's gross negligence or willful misconduct, that may be suffered or incurred by any such indemnified person in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provisions of this Note shall not affect the legality, validity or enforceability of the remaining provisions hereof. No previous waiver and no failure or delay by the Note Holder or Authorized Party in acting with respect to the terms of this Note shall constitute a waiver of any breach, default or failure of condition under this Note. A waiver of any term of this Note or any of the obligations secured thereby must be made in writing by a duly-authorized officer of the Note Holder and shall be limited to the express terms of such waiver. Borrower agrees to make all payments under this Note without set-off or deduction and regardless of any counterclaim or defense.

This Note is not a contract of employment for any period of time. Borrower's employment with Morgan Stanley, the Authorized Party or any of its affiliates or related entities, as applicable, is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term and Borrower's employment can be terminated at any time for any reason or no reason.

This Note shall be binding, in the event of Borrower's death, on Borrower's estate, including, but not limited to, Borrower's personal representatives, heirs, legatees, and executors. This Note shall inure to the benefit of the Note Holder. Note Holder retains the right to assign its rights, title and interest in this Note as it may elect. Borrower expressly consents to any such, or any subsequent, assignment by Note Holder or any successor to Note Holder. Borrower may not assign or transfer this Note or any of Borrower's obligations hereunder.

It is the intention of the Note Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated as described above, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date hereof until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the Note Holder either be rebated to Borrower or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to Borrower. The aggregate of all interest (whether designated as interest) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal balance of this

Exhibit 8
Page 62

Note remaining unpaid from time to time. If such interest does exceed the maximum legal rate, it shall be deemed a mistake and such excess shall be canceled automatically and, if theretofore paid, rebated to Borrower or credited on the principal amount of this Note, or if this Note has been repaid, then such excess shall be rebated to Borrower.

All notices, requests, demands and other communications to be given to the Borrower pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the Borrower's last known address or such other address as the Borrower shall have designated by notice in writing to the Note Holder, or any successor thereto, in accordance with this paragraph. All notices, requests, demands and other communications to be given to the Note Holder pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the address set forth in the corporate records or such other address as the Note Holder shall have designated by notice in writing to Borrower in accordance with this paragraph.

Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Borrower expressly acknowledges and agrees that Note Holder or any Authorized Party or their respective affiliates, subsidiaries, successors, designees, and assigns, including, but not limited to Morgan Stanley, may commence FINRA arbitration proceedings as contemplated hereunder to enforce the terms and conditions of this Note, and expressly waives any right to assert in opposition to any claim by Note Holder or any Authorized Party that said claimant(s) lack standing to commence FINRA arbitration proceedings. To the fullest extent permitted by law, Borrower expressly waives the right to assert a counterclaim in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note. Borrower expressly agrees that any such counterclaim shall only be made by Borrower in a separate arbitration proceeding. The foregoing does not preclude Borrower from asserting a valid defense, if any, in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note.

No modification of this Note shall be binding or enforceable unless in a writing signed by the Note Holder, or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns thereto, and Borrower. Notwithstanding the foregoing, the Note Holder retains the right to make modifications to this Note that it deems advisable, in its sole discretion, to allow it, its parents, and/or its affiliates to comply with or satisfy any applicable legal, regulatory, or governmental requirements or to qualify for any government loan, subsidy, or other programs.

This Note contains the entire agreement and understanding of the parties with respect to the loan evidenced by this Note, and this Note supersedes all prior communications, representations and negotiations with respect thereto. In the event of any inconsistencies between the terms of this Note and the terms of any other document related to the loan evidenced by the Note, the terms of this Note shall control.

By executing this Note, Borrower expressly acknowledges and agrees that this Note does not constitute

Exhibit 8
Page 63

CONFIDENTIAL
CONFIDENTIAL

a bonus or any other form of compensation, and if Borrower voluntarily terminates Borrower's employment with the Authorized Party or is terminated by the Authorized Party for any reason or no reason, or if one of the other circumstances described in the Note occurs, all outstanding principal and accrued interest under the Note will become immediately due and payable to the Note Holder.

BORROWER

_____          1/29/2018
Signature - Ryan Hyslop                          Date

Exhibit 8
Page 64

CONFIDENTIAL
CONFIDENTIAL

HYSLOP-MS-00000068
MSSB-GT(Hyslop)-000515

# EXHIBIT 9

Exhibit 9
Page 65

MORGAN STANLEY SMITH BARNEY FA NOTES HOLDINGS LLC                    PROMISSORY NOTE

$240,826.24                    _RENO_ , _NV_                    February 1, 2019

(AMOUNT)              (CITY AND STATE)                         (DATE)

Subject to deposit, the undersigned ("Borrower") hereby affirms and acknowledges his/her indebtedness to Morgan Stanley Smith Barney FA Notes Holdings LLC ("Notes Holdings"), at (branch address) _5390 KIETZKE STE 200 RENO, NV 89511_, or any subsequent holder of this Promissory Note (the "Note Holder") for the entire amount indicated above, plus accrued interest. The loan proceeds shall be deposited into Borrower's employee account with Morgan Stanley Smith Barney LLC.

In connection with the aforementioned, the Borrower promises to pay to the Note Holder the principal sum of two hundred forty thousand eight hundred twenty six dollars and twenty four cents ($240,826.24) with interest on any unpaid balance thereof at the rate of 2.75% per annum ("Interest Rate") (which is equal to or exceeds the applicable Federal Rate) on the balance remaining from time to time unpaid. The interest rate on this loan is determined as of the date of execution of this Note and shall remain fixed for the duration of the loan. Payments of principal and interest shall be due and payable in the amounts and on the dates provided for hereafter. Accrued interest shall be due and payable at the same time that principal installments are due and payable. Payment of principal shall be made as follows on the following "Payment Dates":

$60,206.56 on February 1, 2020

$60,206.56 on February 1, 2021

$60,206.56 on February 1, 2022

$60,206.56 on February 1, 2023

By signing this Note, Borrower expressly agrees, authorizes and directs Notes Holdings, or any of its affiliates, subsidiaries, successors, designees or assigns, including but not limited to Morgan Stanley Smith Barney LLC d/b/a Morgan Stanley Wealth Management ("Morgan Stanley") (collectively, the "Authorized Parties"), to deduct on each Payment Date the annual installment payment from any securities account that Borrower maintains with the Authorized Parties, either individually or jointly with another person, and to deliver such deduction to the Note Holder with a direction to apply it to the outstanding amount then owed under this Note. If the deduction from the securities account of the Borrower is not sufficient, then the Borrower shall pay the outstanding amount by check. Should full payment by the Borrower not be made by such deduction and/or check within ten (10) business days following the applicable Payment Date, Borrower expressly agrees, authorizes and directs the Authorized Parties to deduct such payment from any Compensation (as defined below) owed to Borrower from the Authorized Parties, and to deliver such deduction to the Note Holder with a direction to apply it to the indebtedness hereunder. Payments received by the Note Holder shall be applied first to any accrued and unpaid interest due on this Note and then to the unpaid principal. For purposes of this Note, the term "Compensation" shall mean all bonuses, commissions, incentive compensation, and any other remuneration paid to Borrower by an Authorized Party, but shall not include Borrower's salary for services actually rendered. Notwithstanding any authority to recover against Borrower contained in this Note, there shall be no authority to accelerate the payment or settlement of any Compensation that constitutes a deferral of compensation for purposes of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), except to the extent that such acceleration would not cause Borrower to recognize income for United States federal income tax purposes prior to the time of payment or settlement of the compensation or to incur interest or additional tax under Section 409A.

**Exhibit 9**
**Page 66**

CONFIDENTIAL

CONFIDENTIAL

HYSLOP-MS-00000072
MSSB-GT(Hyslop)-000519

The Note Holder is not limited to recovering any amounts due and payable under this Note (including interest) from any securities account that Borrower maintains with the Authorized Parties or Compensation payable to Borrower from the Authorized Parties and can recover all such amounts loaned to Borrower, plus interest, as full recourse obligations of Borrower. As a result, Borrower shall be personally liable for payment of this Note, and any and all assets of Borrower, wherever located throughout the world, may be applied to the satisfaction of Borrower's obligations hereunder.

All amounts outstanding under the Note shall automatically be, and become, immediately due and payable, without notice or demand, (i) if the Borrower's employment with an Authorized Party terminates voluntarily or involuntarily for any reason or no reason whatsoever, including by reason of death, total or permanent disability, or retirement, (ii) if the Borrower fails to maintain all licenses and registrations from the Financial Industry Regulatory Authority, and such other exchanges, state securities commissions and other regulatory bodies as the Authorized Parties shall determine are necessary for Borrower to possess in order to conduct securities or commodities transactions, (iii) if the Borrower fails to fully pay the principal and interest due for any Payment Date within seventy-five (75) days following any such Payment Date, or (iv) upon the filing of a voluntary or involuntary petition by or against the Borrower under any provision of any Federal or State bankruptcy or similar laws, any assignment by Borrower for the benefit of creditors, the entry of judgment or issuance of an order of attachment or garnishment against the Borrower, or the commencement of any proceedings or procedure for enforcement of a money judgment against the Borrower. Each of the items designated (i) through (iv) are hereinafter referred to as "Acceleration Events." Upon the happening of any of the Acceleration Events, the Borrower shall be deemed to be in Default on the Note and any outstanding balance due on this Note will become immediately due and payable, together with interest accruing from the date of Default, at the Interest Rate plus 4% per annum. In the event of Default, an Authorized Party may report information about your account to credit bureaus. The Borrower hereby waives presentment, demand for payment, protest or notice of any kind in connection with this Note.

The Borrower may prepay, without premium or penalty, all or any portion of the aggregate principal amount of the obligations due hereunder. Any such prepayment shall include all accrued and unpaid interest on the principal sum being repaid and shall be applied in chronologically inverse order of amortization.

Borrower understands and agrees that no portion of the proceeds of any loan offered pursuant to Morgan Stanley's Portfolio Loan Account ("PLA") program or any similar program offered by any of the Authorized Parties may be used to repay any amounts due and payable under this Note.

Borrower understands, agrees and directs the Authorized Parties that in the event the Borrower defaults in any payment or a portion of any payment due hereunder, the Authorized Parties, as agents of the Note Holder, shall have the right, without notice, and to the maximum extent permitted by applicable law, to take steps necessary or appropriate to enforce and/or ensure compliance with any of the terms or conditions of the Note, including, but not limited to, bringing legal action as contemplated hereunder to recover all amounts outstanding hereunder and/or withholding from any and all Compensation, securities, property of the Borrower or such other amounts due or held in an account for the undersigned at Morgan Stanley or any of its respective affiliates (or successors), an amount equal to all amounts outstanding hereunder and to deliver such withheld amounts to the Note Holder with a direction to apply such amounts to the indebtedness hereunder.

Borrower hereby agrees to indemnify and hold harmless (to the fullest extent permitted by applicable law), and to reimburse, the Note Holder and any Authorized Party and their respective affiliates, subsidiaries, officers, directors, employees, agents, controlling persons, successors, designees, and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any liabilities, losses, damages, costs, expenses (including attorneys' fees), actions, suits, judgments or investigative or administrative proceedings ("Liabilities"), other than Liabilities arising as a result of the Note Holder's or Authorized Party's gross

Exhibit 9
Page 67

negligence or willful misconduct, that may be suffered or incurred by any such indemnified person in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provisions of this Note shall not affect the legality, validity or enforceability of the remaining provisions hereof. No previous waiver and no failure or delay by the Note Holder or Authorized Party in acting with respect to the terms of this Note shall constitute a waiver of any breach, default or failure of condition under this Note. A waiver of any term of this Note or any of the obligations secured thereby must be made in writing by a duly-authorized officer of the Note Holder and shall be limited to the express terms of such waiver. Borrower agrees to make all payments under this Note without set-off or deduction and regardless of any counterclaim or defense.

This Note is not a contract of employment for any period of time. Borrower's employment with Morgan Stanley, the Authorized Party or any of its affiliates or related entities, as applicable, is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term and Borrower's employment can be terminated at any time for any reason or no reason.

This Note shall be binding, in the event of Borrower's death, on Borrower's estate, including, but not limited to, Borrower's personal representatives, heirs, legatees, and executors. This Note shall inure to the benefit of the Note Holder. Note Holder retains the right to assign its rights, title and interest in this Note as it may elect. Borrower expressly consents to any such, or any subsequent, assignment by Note Holder or any successor to Note Holder. Borrower may not assign or transfer this Note or any of Borrower's obligations hereunder.

It is the intention of the Note Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated as described above, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date hereof until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the Note Holder either be rebated to Borrower or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to Borrower. The aggregate of all interest (whether designated as interest) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal balance of this Note remaining unpaid from time to time. If such interest does exceed the maximum legal rate, it shall be deemed a mistake and such excess shall be canceled automatically and, if theretofore paid, rebated to Borrower or credited on the principal amount of this Note, or if this Note has been repaid, then such excess shall be rebated to Borrower.

All notices, requests, demands and other communications to be given to the Borrower pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the Borrower's last known address or such other address as the Borrower shall have designated by notice in writing to the Note Holder, or any successor thereto, in accordance with this paragraph. All notices, requests, demands and other communications to be given to the Note Holder pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the address set forth in the corporate records or such other address as the Note Holder shall have designated by notice in writing to Borrower in accordance with this paragraph.

Exhibit 9
Page 68

Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Borrower expressly acknowledges and agrees that Note Holder or any Authorized Party or their respective affiliates, subsidiaries, successors, designees, and assigns, including, but not limited to Morgan Stanley, may commence FINRA arbitration proceedings as contemplated hereunder to enforce the terms and conditions of this Note, and expressly waives any right to assert in opposition to any claim by Note Holder or any Authorized Party that said claimant(s) lack standing to commence FINRA arbitration proceedings. To the fullest extent permitted by law, Borrower expressly waives the right to assert a counterclaim in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note. Borrower expressly agrees that any such counterclaim shall only be made by Borrower in a separate arbitration proceeding. The foregoing does not preclude Borrower from asserting a valid defense, if any, in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note.

No modification of this Note shall be binding or enforceable unless in a writing signed by the Note Holder, or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns thereto, and Borrower. Notwithstanding the foregoing, the Note Holder retains the right to make modifications to this Note that it deems advisable, in its sole discretion, to allow it, its parents, and/or its affiliates to comply with or satisfy any applicable legal, regulatory, or governmental requirements or to qualify for any government loan, subsidy, or other programs.

This Note contains the entire agreement and understanding of the parties with respect to the loan evidenced by this Note, and this Note supersedes all prior communications, representations and negotiations with respect thereto. In the event of any inconsistencies between the terms of this Note and the terms of any other document related to the loan evidenced by the Note, the terms of this Note shall control.

By executing this Note, Borrower expressly acknowledges and agrees that this Note does not constitute a bonus or any other form of compensation, and if Borrower voluntarily terminates Borrower's employment with the Authorized Party or is terminated by the Authorized Party for any reason or no reason, or if one of the other circumstances described in the Note occurs, all outstanding principal and accrued interest under the Note will become immediately due and payable to the Note Holder.

BORROWER

Signature - Ryan Hyslop                    2/6/2019

                                            Date

Exhibit 9
Page 69

CONFIDENTIAL                    CONFIDENTIAL                    HYSLOP-MS-00000075
MSSB-GT(Hyslop)-000522

# EXHIBIT 10

Exhibit 10
Page 70

| | |
|---|---|
| **From:** | Growth Award [/O=MS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=142644132A] |
| **Sent:** | 2/15/2019 2:19:38 AM |
| **To:** | Hyslop, Ryan (Wealth Mgmt MS) [/O=MS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Ryan.Hyslop] |
| **Subject:** | Lending Growth Award Promissory Note Approved |
| **Attachments:** | 2018_Growth_Contract_27HVK_1_PN.pdf |

You have acknowledged, via electronic signature, acceptance and signing of the Promissory Note, which is attached hereto, and waived any applicable rights to require an original (non-electronic) signature or delivery or retention of non-electronic records of the Promissory Note. If you did not intend to agree to the foregoing and be bound by the terms and conditions of the Promissory Note, you must immediately notify your Branch and/or Complex Manager, in writing, and remit to Morgan Stanley all loan funds, if any, provided to you pursuant to the Promissory Note.

This email was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.

CONFIDENTIAL

Exhibit 10
Page 71
CONFIDENTIAL

MSSB-HYSLOP-00001398
MSSB-GT(Hyslop)-002282

Morgan Stanley | MY PRACTICE CUSTOM REPORT
Feb 15, 2019

## Lending Growth Award Contract

Ryan R Hyslop
RENO LOC

### Lending Growth Award Contracts

| 2018 Lending Growth Award Details | As of: Feb 15, 2019 |
| --- | --- |
| **Advisor Name** | Hyslop, Ryan R |
| **Forecasted Lending Growth Award ($)** | 14,928.64 |

| 2018 Lending Growth Award Status | As of: Feb 15, 2019 |
| --- | --- |
| **Lending Growth Award Document** | Both 'Lending Growth Award Bonus Agreement' and 'Promissory Note' Approved |
| **Bonus Agreement** | Approved on Feb 12 2019 11:12PM |
| **Promissory Note** | Approved on Feb 12 2019 11:13PM |

### MORGAN STANLEY SMITH BARNEY FA NOTES HOLDINGS LLC
### PROMISSORY NOTE & RELEASE

### BORROWER NAME / MSID: Hyslop, Ryan R /27HVK
### AMOUNT - PRINCIPAL: $14,928.64

February 2019

WHEREAS, the above-referenced employee ("Borrower") is currently employed as a financial advisor/private wealth advisor by Morgan Stanley Smith Barney LLC ("Morgan Stanley");

WHEREAS, Morgan Stanley Smith Barney FA Notes Holdings LLC ("Notes Holdings") has determined that Borrower is eligible to receive a loan in the principal amount set forth above which will be provided in March 2019, provided that Borrower accepts the terms and conditions of the loan described in this Promissory Note and Release ("Note") and agrees to the release set forth herein by executing this Note, and remains continuously employed, in good standing, with Morgan Stanley through the date on which Notes Holdings provides Borrower with the loan that is described in this Note; and

WHEREAS, Borrower has agreed to execute this Note and desires to accept the terms and conditions of the loan described in this Note, and agrees to the release set forth in this Note, as a condition of Borrower's eligibility to receive the loan from Notes Holdings as described in this Note.

NOW, THEREFORE, FOR VALUE RECEIVED, Borrower promises to pay to Notes Holdings, or any subsequent holder of this Note (the "Note Holder"), the aggregate principal sum listed above, together with interest on the principal balance, calculated from the date the loan proceeds are disbursed to Borrower, in accordance with the terms and conditions set forth in this Note. Commencing on March 15th, 2020, and on each March 15th thereafter, through and including March 15th, 2024 (each such date, a "Payment Date"), Borrower shall pay to the Note Holder an amount equal to one-fifth (1/5th) of the original principal amount of the Note listed above, plus accrued and unpaid interest on such principal amount, in lawful money of the United States of America in immediately available funds. Interest shall accrue on the principal amount of this Note from the date the loan

**FOR INTERNAL USE ONLY – NOT TO BE SHOWN OR GIVEN TO THE PUBLIC**

Prepared by **Morgan Stanley Wealth** | Page 1 of 6
**Management**

CONFIDENTIAL

Exhibit 10
Page 72
CONFIDENTIAL

MSSB-HYSLOP-00001399
MSSB-GT(Hyslop)-002283

Morgan Stanley | MY PRACTICE CUSTOM REPORT
Feb 15, 2019

Ryan R Hyslop
RENO LOC

## Lending Growth Award Contract

proceeds are disbursed until the date on which all amounts outstanding under this Note are paid in full at a rate per annum equal to the Federal mid-term applicable rate as determined by the Internal Revenue Service for March 2019 or in the month of disbursement, if later.

By signing this Note, Borrower expressly agrees, authorizes and directs Notes Holdings, or any of its affiliates, subsidiaries, successors, designees or assigns, including but not limited to Morgan Stanley (collectively, the "Authorized Parties"), to deduct on each Payment Date the annual installment payment from any securities account that Borrower maintains with the Authorized Parties, either individually or jointly with another person, and to deliver such deduction to the Note Holder with a direction to apply it to the outstanding amount then owed under this Note. If the deduction from the securities account of the Borrower is not sufficient, then the Borrower shall pay the outstanding amount by check. Should full payment by the Borrower not be made by such deduction and/or check within ten (10) business days following the applicable Payment Date, Borrower expressly agrees, authorizes and directs the Authorized Parties to deduct such payment from any Compensation (as defined below) owed to Borrower from the Authorized Parties, and to deliver such deduction to the Note Holder with a direction to apply it to the indebtedness hereunder. Payments received by the Note Holder shall be applied first to any accrued and unpaid interest due on this Note and then to the unpaid principal. For purposes of this Note, the term "Compensation" shall mean all bonuses, commissions, incentive compensation, and any other remuneration paid to Borrower by an Authorized Party, but shall not include Borrower's salary for services actually rendered. Notwithstanding any authority to recover against Borrower contained in this Note, there shall be no authority to accelerate the payment or settlement of any Compensation that constitutes a deferral of compensation for purposes of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), except to the extent that such acceleration would not cause Borrower to recognize income for United States federal income tax purposes prior to the time of payment or settlement of the compensation or to incur interest or additional tax under Section 409A.

The Note Holder is not limited to recovering any amounts due and payable under this Note (including interest) from any securities account that Borrower maintains with the Authorized Parties or Compensation payable to Borrower from the Authorized Parties and can recover all such amounts loaned to Borrower, plus interest, as full recourse obligations of Borrower. As a result, Borrower shall be personally liable for payment of this Note, and any and all assets of Borrower, wherever located throughout the world, may be applied to the satisfaction of Borrower's obligations hereunder.

All amounts outstanding under the Note shall automatically be, and become, immediately due and payable, without notice or demand, (i) if the Borrower's employment with an Authorized Party terminates voluntarily or involuntarily for any reason or no reason whatsoever, including by reason of death, total or permanent disability, or retirement, (ii) if the Borrower fails to maintain all licenses and registrations from the Financial Industry Regulatory Authority, and such other exchanges, state securities commissions and other regulatory bodies as the Authorized Parties shall determine are necessary for Borrower to possess in order to conduct securities or commodities transactions, (iii) if the Borrower fails to fully pay the principal and interest due for any Payment Date within seventy-five (75) days following any such Payment Date, or (iv) upon the filing of a voluntary or involuntary petition by or against the Borrower under any provision of any Federal or State bankruptcy or similar laws, any assignment by Borrower for the benefit of creditors, the entry of judgment or issuance of an order of attachment or garnishment against the Borrower, or the commencement of any proceedings or procedure for enforcement of a money judgment against the Borrower. Each of the items designated (i) through (iv) are hereinafter referred to as "Acceleration Events." Upon the happening of any of the Acceleration Events, the Borrower shall be deemed to be in Default on the Note and any outstanding balance due on this Note will become immediately due and payable, together with interest accruing from the date of Default, at the Interest Rate plus 4% per annum. In the event of Default, an Authorized Party may report information about your account to credit bureaus. The Borrower hereby waives presentment, demand for payment, protest or notice of any kind in connection with this Note.

The Borrower may prepay, without premium or penalty, all or any portion of the aggregate principal amount of the obligations due hereunder. Any such prepayment shall include all accrued and unpaid interest on the principal sum being repaid and shall be applied in chronologically inverse order of amortization.

**FOR INTERNAL USE ONLY – NOT TO BE SHOWN OR GIVEN TO THE PUBLIC**

Prepared by **Morgan Stanley Wealth** | Page 2 of 6
**Management**

CONFIDENTIAL

Exhibit 10
Page 73
CONFIDENTIAL

MSSB-HYSLOP-00001400
MSSB-GT(Hyslop)-002284

Morgan Stanley | MY PRACTICE CUSTOM REPORT
Feb 15, 2019

Ryan R Hyslop
RENO LOC

## Lending Growth Award Contract

Borrower understands and agrees that no portion of the proceeds of any loan offered pursuant to Morgan Stanley's Portfolio Loan Account ("PLA") program, Express Credit Line ("ECL") program, or any similar program offered by any of the Authorized Parties may be used to repay any amounts due and payable under this Note.

Borrower understands, agrees and directs the Authorized Parties that in the event the Borrower defaults in any payment or a portion of any payment due hereunder, the Authorized Parties, as agents of the Note Holder, shall have the right, without notice, and to the maximum extent permitted by applicable law, to take steps necessary or appropriate to enforce and/or ensure compliance with any of the terms or conditions of the Note, including, but not limited to, bringing legal action as contemplated hereunder to recover all amounts outstanding hereunder and/or withholding from any and all Compensation, securities, property of the Borrower or such other amounts due or held in an account for the undersigned at Morgan Stanley or any of its respective affiliates (or successors), an amount equal to all amounts outstanding hereunder and to deliver such withheld amounts to the Note Holder with a direction to apply such amounts to the indebtedness hereunder.

Borrower hereby agrees to indemnify and hold harmless (to the fullest extent permitted by applicable law), and to reimburse, the Note Holder and any Authorized Party and their respective affiliates, subsidiaries, officers, directors, employees, agents, controlling persons, successors, designees, and assigns from and against any and all liabilities, losses, taxes, damages, costs and expenses of any liabilities, losses, damages, costs, expenses (including attorneys' fees), actions, suits, judgments or investigative or administrative proceedings ("Liabilities"), other than Liabilities arising as a result of the Note Holder's or Authorized Party's gross negligence or willful misconduct, that may be suffered or incurred by any such indemnified person in connection with this Note and the exercise of any rights, remedies or privileges hereunder, including, but not limited to, as a result of a breach of the Note and efforts to force repayment of the Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provisions of this Note shall not affect the legality, validity or enforceability of the remaining provisions hereof. No previous waiver and no failure or delay by the Note Holder or Authorized Party in acting with respect to the terms of this Note shall constitute a waiver of any breach, default or failure of condition under this Note. A waiver of any term of this Note or any of the obligations secured thereby must be made in writing by a duly-authorized officer of the Note Holder and shall be limited to the express terms of such waiver. Borrower agrees to make all payments under this Note without set-off or deduction and regardless of any counterclaim or defense.

This Note is not a contract of employment for any period of time. Borrower's employment with Morgan Stanley, the Authorized Party or any of its affiliates or related entities, as applicable, is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term. Accordingly, Borrower's employment can be terminated at any time with or without cause at the option of either Employee or Morgan Stanley.

This Note shall be binding, in the event of Borrower's death, on Borrower's estate, including, but not limited to, Borrower's personal representatives, heirs, legatees, and executors. This Note shall inure to the benefit of the Note Holder. Note Holder retains the right to assign its rights, title and interest in this Note as it may elect. Borrower expressly consents to any such, or any subsequent, assignment by Note Holder or any successor to Note Holder. Borrower may not assign or transfer this Note or any of Borrower's obligations hereunder.

This Note shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflicts of laws principles.

It is the intention of the Note Holder to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Note shall be subject to reduction to the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. If the maturity of this Note is accelerated as described above, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the date hereof

Exhibit 10
Page 74
CONFIDENTIAL

CONFIDENTIAL

MSSB-HYSLOP-00001401
MSSB-GT(Hyslop)-002285

until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the Note Holder either be rebated to Borrower or credited on the principal amount of this Note, or if this Note has been paid, then the excess shall be rebated to Borrower. The aggregate of all interest (whether designated as interest) contracted for, chargeable, or receivable under this Note shall under no circumstances exceed the maximum legal rate upon the unpaid principal balance of this Note remaining unpaid from time to time. If such interest does exceed the maximum legal rate, it shall be deemed a mistake and such excess shall be canceled automatically and, if theretofore paid, rebated to Borrower or credited on the principal amount of this Note, or if this Note has been repaid, then such excess shall be rebated to Borrower.

All notices, requests, demands and other communications to be given to the Borrower pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the Borrower's last known address or such other address as the Borrower shall have designated by notice in writing to the Note Holder, or any successor thereto, in accordance with this paragraph. All notices, requests, demands and other communications to be given to the Note Holder pursuant to this Note shall be in writing and shall be deemed to have been duly given if delivered by hand or overnight courier or mailed by registered or certified mail, return receipt requested, postage prepaid addressed to the address set forth in the corporate records or such other address as the Note Holder shall have designated by notice in writing to Borrower in accordance with this paragraph.

Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority ("FINRA") and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Borrower expressly acknowledges and agrees that Note Holder or any Authorized Party or their respective affiliates, subsidiaries, successors, designees, and assigns, including, but not limited to Morgan Stanley, may commence FINRA arbitration proceedings as contemplated hereunder to enforce the terms and conditions of this Note, and expressly waives any right to assert in opposition to any claim by Note Holder or any Authorized Party that said claimant(s) lack standing to commence FINRA arbitration proceedings. To the fullest extent permitted by law or any applicable rule or regulation, Borrower expressly waives the right to assert a counterclaim in opposition to any such claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note. Borrower expressly agrees that any such counterclaim shall only be made by Borrower in a separate arbitration proceeding. The foregoing does not preclude Borrower from asserting a valid defense, if any, in opposition to any claim or action brought against Borrower by Note Holder or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns on this Note.

No modification of this Note shall be binding or enforceable unless in a writing signed by the Note Holder, or any Authorized Party and their respective affiliates, subsidiaries, successors, designees, and assigns thereto, and Borrower. Notwithstanding the foregoing, the Note Holder retains the right to make modifications to the terms and conditions of the loan described in this Note that it deems advisable, in its sole discretion, to allow it, its parents, and/or its affiliates to comply with or satisfy any applicable legal, regulatory, or governmental requirements or to qualify for any government loan, subsidy, or other programs.

Borrower agrees to release all claims against Morgan Stanley, and any and all of its former and existing parents, subsidiaries, predecessors, successors, and affiliated entities, and all of its and their respective current and former directors, officers, employees, agents, managers, shareholders, successors, assigns, and other representatives, whether known or unknown to Borrower, that Borrower may have as of the date of Borrower's execution of this Note.This release includes, but is not limited to, any claim arising out of or relating in any way to your employment, any tort, defamation, injury to reputation, fraud, contract, or other common law claim, any claim for wages, any claim for civil or statutory penalties, and any claim arising under or based on any federal, state or local law, rule or regulation, including but not limited to claims for discrimination or retaliation arising under any federal, state, or local law, including Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Equal Pay Act, the Uniform Services Employment and Re-employment Rights Act, the Civil Rights Act of 1991, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family And Medical Leave Act, the Borrower Retirement Income Security Act, the Age Discrimination in Employment Act of 1967, the Worker Adjustment Retraining and Notification Act, the Occupational Safety and Health Act of 1970, and the Older Workers Benefit Protection Act, the New York State Human Rights Law, New York City Human Right Law, New York Labor Act, New York Equal Pay Law, New York Civil Rights Law, New York Rights of Person With Disabilities Law, New York Equal Rights Law, New York Worker Adjustment Retraining and

Exhibit 10
Page 75
CONFIDENTIAL

CONFIDENTIAL

Morgan Stanley | MY PRACTICE CUSTOM REPORT
Feb 15, 2019

## Lending Growth Award Contract

Ryan R Hyslop
RENO LOC

Notification Act,all as amended, or any claim under the California Private Attorney General Act, and any claim for costs, expenses and attorneys' fees with respect thereto. If any released claim is brought by Borrower, for Borrower's benefit or on Borrower's behalf, Borrower expressly waives any right or claim to recover any form of monetary or other damages to the fullest extent permitted by law, including attorneys' fees and costs or any other form of personal recovery or relief from Morgan Stanley based upon such claim. To the extent Borrower receives any personal or monetary relief from Morgan Stanley based upon any such claim, Morgan Stanley will be entitled to an offset for the payments made pursuant to this Note, to the fullest extent permitted by law.Borrower further agrees to take all actions necessary to dismiss with prejudice any pending civil lawsuit or arbitration covered by this release. This release does not (a) release claims that arise after the date of Borrower's execution of this Note, (b) release claims Borrower has asserted on his or her own behalf in civil litigation or arbitration that is filed and pending on the date this Note was sent to Borrower, or (c) release claims asserted on behalf of Borrower in a class or collective action which has been certified by a court as a class or collective action on the date this Note was sent to Borrower. This release also is not intended to and does not prevent or bar you from (i) seeking to enforce your rights under this Note, (ii) challenging the validity or enforceability of this release, (iii) filing an administrative charge with any federal, state or local administrative agency, including the Equal Employment Opportunity Commission ("EEOC") or any state or local fair employment practices agency, or (iv) communicating or cooperating with or participating in any investigation or proceeding conducted by any such administrative agency. In addition, nothing in this release precludes you from benefiting from classwide injunctive relief awarded in any fair employment practices case brought by any governmental agency, provided such relief does not result in your receipt of any monetary benefit or equivalent thereof from Morgan Stanley. You acknowledge and agree, however, that you are waiving any right to recover any monetary damages or any other form of personal relief from Morgan Stanley based upon any such action, investigation or proceeding. If Borrower has worked in California, Borrower acknowledges that this is a full and final release of all such claims, whether those claims are now known or unknown, and Borrower waives all rights or benefits that Borrower may have or claim to have pursuant to the provisions of Section 1542 of the Civil Code of the State of California which provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Borrower has been advised in writing that he or she has twenty-one (21) days to consider this Note and the release set forth herein prior to signing it and seven (7) days following signing to revoke it, and to consult with an attorney before agreeing to this release and signing this Note.If Borrower signs this Note prior to the expiration of the twenty-one (21) day period, Borrower acknowledges that Borrower is signing this Note and agreeing to the release set forth herein freely and voluntarily. Borrower further acknowledges that the value provided to Borrower under this Note exceeds any payment or thing of value to which Borrower is otherwise entitled, and is just and sufficient consideration for the waivers, release, and commitments set forth herein.

This Note, however, does not waive any rights of indemnification Borrower may have been granted under the Certificates of Incorporation or formation, Bylaws or other applicable documents of Morgan Stanley relating to Borrower's actions on behalf of Morgan Stanley in the scope of and during the course of Borrower's employment by Morgan Stanley. Nor does anything in this Note impair Borrower's rights in any of Borrower's Morgan Stanley Wealth Management brokerage or customer accounts or to vested retirement, pension or 401 (k) benefits, if any, due Borrower by virtue of Borrower's employment by Morgan Stanley.Nor shall any elections, notices or benefits for which Borrower is eligible as a separated employee of Morgan Stanley be impaired by this Note.

This Note contains the entire agreement and understanding of the parties with respect to the loan evidenced by this Note and the release set forth herein, and this Note supersedes all prior communications, representations and negotiations with respect thereto. In the event of any inconsistencies between the terms of this Note and the terms of any other document related to the loan evidenced by the Note, the terms of this Note shall control.

By executing this Note, Borrower expressly acknowledges and agrees that this Note does not constitute a bonus or any other form of compensation, and if Borrower voluntarily terminates Borrower's employment with the Authorized Party or is terminated by the Authorized Party for any reason or no reason, or if one of the other circumstances described in the Note occurs, all outstanding principal and accrued interest under the Note will become immediately due and payable to the Note Holder.

BORROWER

---

FOR INTERNAL USE ONLY - NOT TO BE SHOWN OR GIVEN TO THE PUBLIC

CONFIDENTIAL

Exhibit 10
Page 76
CONFIDENTIAL

MSSB-HYSLOP-00001403
MSSB-GT(Hyslop)-002287

Morgan Stanley | MY PRACTICE CUSTOM REPORT
Feb 15, 2019

Lending Growth Award Contract

Ryan R Hyslop
RENO LOC

NAME _____

Signature _____ Date _____

☐ **By checking here and submitting below, I am agreeing to all terms and conditions of the above Promissory Note, and waive any applicable rights to require an original (non-electronic) signature or delivery or retention of non-electronic records of the Promissory Note.**

FOR INTERNAL USE ONLY – NOT TO BE SHOWN OR GIVEN TO THE PUBLIC

Prepared by **Morgan Stanley Wealth** | Page 6 of 6
**Management**

Exhibit 10
Page 77
CONFIDENTIAL

CONFIDENTIAL

MSSB-HYSLOP-00001404
MSSB-GT(Hyslop)-002288

# EXHIBIT 11

Exhibit 11
Page 78

# ESKRIDGE LAW

GAYLE L. ESKRIDGE (BAR NO. 134822)
JANELLE L. MENGES (BAR NO. 293865)
DAVINA DAWSON (BAR NO. 331622)
21250 Hawthorne Boulevard, Suite 450
Torrance, CA 90503-5512
Telephone:    310/303-3951
Facsimile:    310/303-3952
Email:    geskridge@eskridgelaw.net

Attorneys for Respondent RYAN HYSLOP

**BEFORE**

**FINRA DISPUTE RESOLUTION, INC.**

| | |
|---|---|
| MORGAN STANLEY SMITH BARNEY, LLC,<br><br>Claimant,<br><br>v.<br><br>RYAN HYSLOP, individually,<br><br>Respondent. | **CASE NO.: 20-03924**<br><br>**ANSWER OF RESPONDENT RYAN HYSLOP TO RULE 13806 STATEMENT OF CLAIM OF MORGAN STANLEY SMITH BARNEY, LLC** |

In accordance with FINRA Rule 13303, Respondent RYAN HYSLOP ("Ryan Hyslop") answers the Arbitration Claim of MORGAN STANLEY SMITH BARNEY, LLC ("Morgan Stanley") as follows:

Ryan Hyslop denies generally and specifically, each and every allegation contained in the unverified Arbitration Claim and the whole thereof, including each and every purported cause of action contained therein, and further denies that Morgan Stanley sustained damages as alleged, or at all, by reason of any alleged act, breach, or omission on the part of Ryan Hyslop, or that Morgan Stanley is entitled to any relief whatsoever against Ryan Hyslop and/or that Ryan Hyslop is in any way liable.

Among other things, Ryan Hyslop denies that he has agreed or is required (as alleged in paragraph 3 of the Arbitration Claim) to arbitrate any claim(s) relating to the Promissory Note dated February 2019 (Exhibit H to the Arbitration Claim), since the Arbitration Claim fails to allege or show that Ryan Hyslop signed the Promissory Note dated February 2019. As a result, Ryan Hyslop denies that FINRA has jurisdiction to hear and decide the claim(s) relating to the Promissory Note dated February 2019.

1    Ryan Hyslop also denies he was employed at a Morgan Stanley branch located in Stateline, Nevada

2    (as alleged in paragraph 2 of the Arbitration Claim). Ryan Hyslop was a California employee, who worked

3    in San Diego County, California.    Ryan Hyslop was hired as a California employee, he worked

4    predominantly in San Diego County, California, and had his base of operations in San Diego County,

5    California. Although Ryan Hyslop began reporting to a branch manager in Nevada in 2015, Ryan Hyslop

6    continued to spend the vast amount of his time in Southern California, about 90% of his customers were in

7    Southern California, and 95% of his income came from Southern California.    Ryan Hyslop's group, the

8    Sierra Pacific Group, was based in the San Diego and the Lake Tahoe areas. Ryan Hyslop worked primarily

9    in Cardiff-by-the-Sea, which is in San Diego County, California. Morgan Stanley made annual inspections

10    of Ryan Hyslop's office in Cardiff-by-the-Sea, California. When Ryan Hyslop was wrongfully terminated,

11    Morgan Stanley sent his Form U-5 to his Cardiff-by-the-Sea address September 11, 2020 (and did **not** send

12    a copy of the form to Ryan Hyslop's Nevada address).    (This list of reasons is not exhaustive.  Additional

13    proof will be provided in Ryan Hyslop's Motion for Change of Hearing Location which is being filed

14    concurrently herewith. Additional proof of Ryan Hyslop's place of employment will also be provided at the

15    arbitration hearing on the merits, if so required.)

16    Ryan Hyslop also denies that Reno, Nevada is the "hearing location closest to the location where [he]

17    was employed at the time of the events giving rise to the dispute" (as alleged in paragraph 6 of the

18    Arbitration Claim).  The dispute arose shortly after Morgan Stanley wrongfully terminated Ryan Hyslop's

19    employment.  As discussed immediately above, at the time of termination, Ryan Hyslop was a California

20    employee, working primarily in San Diego County, California.

21    Ryan Hyslop also denies that he has "refused, and continues to refuse, to honor his obligations under

22    the Notes" (as alleged in paragraph 48 of the Arbitration Claim). As Ryan Hyslop has explained to Morgan

23    Stanley, he is unable to pay the full amount due on the promissory notes due to the actions of Morgan

24    Stanley, which actions Ryan Hyslop contends were unlawful.

25    Ryan Hyslop also denies that Morgan Stanley "has been forced to commence this action" (as alleged

26    in paragraph 49 of the Arbitration Claim).  In fact, Ryan Hyslop's attorneys sent a letter to Morgan Stanley's

27    attorneys Wendy R. Robinson and Mai Klaassen (both Executive Directors, Morgan Stanley Legal and

28    Compliance) on November 9, 2020, complaining about actions Morgan Stanley had taken relating to assets

1   held by the Ryan and Carly Hyslop 2013 Trust ("Hyslop Trust").[1] Ryan Hyslop alleged certain actions were

2   not allowed under the terms of the promissory notes and were in fact **unlawful**. This included Morgan

3   Stanley's bifurcation of two accounts (ending in 4358 and 5679) held by the Hyslop Trust, opening of two

4   new accounts (ending in 6600 and 6605), and transfer of hundreds of securities out of the two original

5   Hyslop Trust accounts (ending in 4358 and 5679) and into these two new accounts, randomly splitting the

6   securities between old and new accounts, with no regard for tax and various other ramifications this would

7   cause. Morgan Stanley did this without providing account opening documents, without obtaining written

8   permission from the trustees of the Hyslop Trust to open the new accounts, without obtaining written

9   permission from the trustees of the Hyslop Trust to transfer securities out of its original account, without

10  sending a Best Interest Contract Letter, and without even notifying the trustees of the Hyslop Trust that any

11  of this was being done. Absolutely nothing in the promissory notes empowered Morgan Stanley to take these

12  actions.

13        Additionally, account 4358 is a Unified Managed Account (specifically, a Select UMA Active Assets

14  Account), which is of course a fiduciary-based account, and the account (number 6605) to which $511,570

15  of its assets were transferred, is **not** a UMA account. This of course subjects the assets to unlimited risk.

16  Also, neither of the new accounts has an advisor assigned to it (which was confirmed by Morgan Stanley as

17  recently as November 30, 2020), which means there is no one to take actions and make decisions in the best

18  interest of the accounts.[2] In fact, since Morgan Stanley terminated Ryan Hyslop, none of the Hyslop Trust

19  accounts have had advisors assigned to them. In the November 9, 2020 letter, Ryan Hyslop's attorneys

20  demanded that the red flags be removed from the Hyslop Trust accounts. (The Hyslop Trust has a complaint

21  against Morgan Stanley pending – FINRA File No. 20200688423.)

22        Then, on November 13, 2020, Ryan Hyslop's attorneys spoke with Morgan Stanley's attorney

23  Mauricio Beugelmans (of Murphy & McGonigle, RLLP) requesting assistance in getting the red flags

24

25  [1]See Exhibit 1, November 9, 2020 letter from Eskridge Law to Morgan Stanley attorneys Wendy
    Robinson and Mai Klaassen, which is attached hereto and incorporated herein by this reference.

26
27  [2]When Ryan Hyslop recently asked Brian Cheney, Complex Risk Officer for the Sacramento
    Complex, who was the advisor on the Hyslop Trust accounts, Brian Cheney replied that *he* would be the
    "contact" on the accounts. Ryan Hyslop has not heard of another instance where the Complex Risk Officer
28  for the Sacramento Complex (or any Complex) took on advisor duties on accounts.

1   removed from the Hyslop Trust's accounts. In what Ryan Hyslop contends is clear retaliation for

2   complaining about alleged illegalities, only **three weeks** from the date of the letter from Ryan Hyslop's

3   attorneys to Morgan Stanley attorneys Wendy Robinson and Mai Klaassen, Morgan Stanley filed this Rule

4   13806 claim against Ryan Hyslop. Morgan Stanley claims the reason it manipulated and red-flagged the

5   Hyslop Trust accounts was because of the promissory notes which are the subject of this claim.

6        Additionally, contrary to its assertion (as alleged in paragraph 49 of the Arbitration Claim), Morgan

7   Stanley was not "forced to . . . retain counsel to represent it in this action," since Morgan Stanley already had

8   three in-house attorneys (Mai Klaassen, Wendy Robinson, and John P. Davis – all Executive Directors and

9   Counsel in Morgan Stanley's Legal Compliance Division), plus two outside firms (Murphy & McGonigle,

10   RLLP and Coss & Momjian, LLP) representing it against Ryan Hyslop.

11        Ryan Hyslop also denies that Morgan Stanley "has performed all terms and conditions required of

12   it under the Notes," as alleged in paragraph 50 of the Arbitration Claim. Every contract imposes upon each

13   party a duty of good faith and fair dealing in its performance and its enforcement. The covenant of good faith

14   and fair dealing finds particular application in situations where one party is invested with a discretionary

15   power affecting the rights of the other. Such power must be exercised in good faith. [*Carma Developers*

16   *(Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371-372.] Morgan Stanley has

17   breached its implied promise of good faith and fair dealing by using the promissory notes as an excuse to

18   manipulate and red-flag Ryan Hyslop's accounts, as described hereinabove.

19

20                   **AFFIRMATIVE DEFENSES**

21        As and for separate and alternative affirmative defenses to each and every separate cause of action

22   of the Arbitration Claim on file herein, Ryan Hyslop is informed and believes and thereupon alleges as

23   follows:

24

25       **1.**     **Fails to State Facts Sufficient to Constitute a Cause of Action:** The Arbitration Claim

26   and each purported cause of action therein fails to state facts sufficient to constitute a cause of action against

27   Ryan Hyslop. Among other things, the promissory notes which are attached to the Arbitration Claim show

28   that Claimant Morgan Stanley Smith Barney, LLC is not the holder of those notes. Additionally, the

1  Arbitration Claim fails to allege or show that Ryan Hyslop signed the Promissory Note dated February 2019
2  (Exhibit H to the Arbitration Claim).

3

4      **2.**      **Lack of Standing:**  Claimant Morgan Stanley Smith Barney, LLC lacks standing to make
5  this claim, as it is not the holder of any of the promissory notes which are the subject of this claim, Morgan
6  Stanley failed to attach any agreement that shows it is the legal owner of the alleged debt and has a right to
7  bring this case, and Morgan Stanley did not even allege that it is the legal owner of the alleged debt.

8

9      **3.**      **Statute of Frauds:**  An agreement that by its terms is not to be performed within a year from
10  the making thereof must be in writing and signed by the party to be charged.  [Cal. Civ. Code § 1624(a)(1).]
11  The promissory note dated February 2019 (Exhibit H to the Arbitration Claim) has not been signed by Ryan
12  Hyslop.  By its terms, this promissory note is not to be performed until March 2024.  Morgan Stanley's claim
13  as to this promissory note is therefore unenforceable.

14

15      **4.**      **Unlawful Objective:**  An essential element of any contract is that it have a lawful objective.
16  [Cal. Civ. Code § 1550.]  A contract, or a provision in a contract, is unlawful if it is:  1) Contrary to an
17  express provision of law; 2) Contrary to the policy of express law, though not expressly prohibited; or 3)
18  Otherwise contrary to good morals.  [Cal. Civ. Code § 1667.]  There is no requirement that a contract violate
19  an express mandate of a statute before it may be declared void as contrary to public policy.  [*Altschul v.*
20  *Sayble* (1978, 2nd Dist.) 83 Cal.App.3d 153, 162.]  A contract that contravenes public policy is illegal.
21  [*Abramson v. Juniper Networks, Inc.* (2004, 6th Dist.) 115 Cal.App.4th 638, review denied.]  Additionally,
22  a law established for a public reason cannot be contravened by a private agreement.  [Cal. Civ. Code § 3513.]

23      The promissory notes upon which Morgan Stanley brings its arbitration claim do not have a lawful
24  objective.  Morgan Stanley seeks to recover $1,313,501.97, plus interest, attorneys' fees, and costs, pursuant
25  to the activation of a payment acceleration clause in eight promissory notes.  This clause is in violation of
26  public policy because it provides that, "All amounts outstanding under the [notes] shall automatically be, and
27  become, immediately due and payable, without notice or demand" if Ryan Hyslop's employment with
28

1    Morgan Stanley "terminates voluntarily or involuntarily for any reason or no reason whatsoever."[3] The notes

2    do not say for "any lawful reason." All the notes say "for any reason or no reason whatsoever." This

3    therefore allowed Morgan Stanley to simply terminate a borrower's employment, even unlawfully, in order

4    to activate the acceleration clause. This is unlawful, and it is exactly what happened in this situation.

5        Under California law, no employee, whether at-will or under contract, can be terminated for a reason

6    that is in violation of a fundamental public policy. [*Tameny v. Atlantic Richfield* Co. (1980) 27 Cal.3d 167,

7    172; *Gantt v. Sentry Ins.* (1992) 1 Cal.4th 1083, 1094 (overruled on other grounds in *Green v. Ralee Eng.*

8    *Co.* (1998) 19 Cal.4th 66, 80); *Silo v. CHW Med. Found.* (2002) 27 Cal.4th 1097, 1104.] California courts

9    have interpreted a fundamental public policy to be any particular constitutional or statutory provision or

10    regulation that is concerned with a matter affecting society at large rather than a purely personal or

11    proprietary interest of the employee or employer. [*Green v. Ralee Eng. Co.* (1998) 19 Cal.4th 66, 79.]

12        Additionally, the California Fair Employment and Housing Act prohibits discrimination and/or

13    harassment against an employee based on sex, race, military and veteran status, and mental disability (among

14    other things) in compensation or in terms, conditions, or privileges of employment.

15        Not only did the clause "for any reason or no reason whatsoever" allow Morgan Stanley to unlawfully

16    terminate an employee and then activate the payment acceleration clause based on that termination, but the

17    unlawful object of these notes actually encouraged Morgan Stanley to terminate employees so it could

18    activate the acceleration clause. In this case, a former co-worker of Ryan Hyslop made a complaint against

19    him (eight months after the co-worker was no longer employed by from Morgan Stanley). Morgan Stanley's

20    Executive Director, Human Resources, Yael Wepman (who is also an attorney, formerly licensed in the State

21    of New York, and who has almost 20 years' experience in employment law) conducted an investigation. She

22    found no corroboration and no substantiation for the former co-worker's complaint. Despite this, Morgan

23    Stanley terminated Ryan Hyslop and now demands payment on the promissory notes pursuant to the payment

24    acceleration clause.

25

26

27

28    [3]See Note A, pages 2 and 4; Note B, pages 2 and 4; Note C, pages 2 and 4; Note D, pages 2 and 4; Note E, pages 2 and 4; Note F, pages 2 and 4; Note G, pages 2 and 4; and Note H, pages 2 and 3.

1    **5.    Illegal and Contrary to Public Policy:**  A contract that contravenes public policy is illegal.

2    [*Abramson v. Juniper Networks, Inc.* (2004, 6th Dist.) 115 Cal.App.4th 638, review denied.]  Additionally,

3    a law established for a public reason cannot be contravened by a private agreement.  [Cal. Civ. Code § 3513.]

4    Morgan Stanley should be barred from recovering because its acts are in violation of public policy.  Morgan

5    Stanley seeks to recover $1,313,501.97, plus interest, attorneys' fees, and costs, pursuant to the activation

6    of an acceleration clause in eight promissory notes.  This clause is in violation of public policy because it

7    provides that, "All amounts outstanding under the [notes] shall automatically be, and become, immediately

8    due and payable, without notice or demand" if Ryan Hyslop's employment with Morgan Stanley "terminates

9    voluntarily or involuntarily for any reason or no reason whatsoever."  The notes do not say for "any lawful

10   reason."  All the notes say "for any reason or no reason whatsoever."  This therefore allowed Morgan Stanley

11   to simply terminate a borrower's employment, even unlawfully, in order to activate the acceleration clause.

12   As described in detail in Affirmative Defense No. 4 above, that is exactly what happened in this case.  The

13   payment acceleration clause contained in all the promissory notes is illegal and contrary to public policy.

14

15   **6.    Equitable Estoppel as to Entire Claim:**  Morgan Stanley has engaged in unlawful conduct

16   and activities with respect to the claim, and by reason of said activities and conduct is estopped from

17   asserting any claims or damages against, or requesting any relief from, Ryan Hyslop.  Among other things,

18   Morgan Stanley unlawfully terminated Ryan Hyslop's employment.  Morgan Stanley then bifurcated two

19   accounts (ending in 4358 and 5679) held by the Hyslop Trust and opened two new accounts (ending in 6600

20   and 6605), and moved hundreds of securities out of the two original Hyslop Trust accounts (ending in 4358

21   and 5679) and into these two new accounts, randomly splitting the securities between old and new accounts,

22   with no regard for tax and various other ramifications this would cause.  Morgan Stanley did this without

23   providing account opening documents, without obtaining written permission from the trustees of the Hyslop

24   Trust to open the new accounts, without obtaining written permission from the trustees of the Hyslop Trust

25   to transfer securities out of its original account, without sending a Best Interest Contract Letter, and without

26   even notifying the trustees of the Hyslop Trust that any of this was being done.  Additionally, account 4358

27   is a Unified Managed Account (specifically, a Select UMA Active Assets Account), which is of course a

28   fiduciary-based account, and the account (number 6605) to which $511,570 of its assets were transferred,

1   is **not** a UMA account.  This of course subjects the assets to unlimited risk.  Also, neither of the new

2   accounts has an advisor assigned to it, which means there is no one to take actions and make decisions in the

3   best interest of the accounts.  In fact, since Morgan Stanley terminated Ryan Hyslop, none of the Hyslop

4   Trust accounts have had advisors assigned to them.  Because of its own unlawful acts, Morgan Stanley is

5   estopped from asserting any claims or damages against, or requesting any relief from, Ryan Hyslop.

6

7       **7.        Equitable Estoppel as to Acceleration Clause:**  Morgan Stanley is equitably estopped from

8   asserting activation of the payment acceleration clause, because such activation was based on Morgan

9   Stanley's own unlawful acts, i.e., the unlawful termination of Ryan Hyslop's employment as described in

10  Affirmative Defense No. 4, above.

11

12      **8.        Unclean Hands:**  Morgan Stanley has committed numerous wrongdoings, by unlawfully

13  terminating Ryan Hyslop, then red-flagging the Hyslop Trust accounts, among other things.  Morgan Stanley

14  is attempting to benefit from its wrongdoing by bringing this lawsuit against Ryan Hyslop.

15

16      **9.        Impossibility and Impracticability:**    Morgan Stanley terminated Ryan Hyslop's

17  employment, red-flagged the Hyslop Trust accounts, bifurcated two accounts as described on pages two and

18  three above, defamed Ryan Hyslop so that Ryan Hyslop was unable to obtain employment with a large firm,

19  and (based on the unlawful termination of Ryan Hyslop's employment) activated the payment acceleration

20  clauses contained in the promissory notes.  As a direct result of these actions, it is impossible and

21  impracticable for Ryan Hyslop to pay the remaining amounts due on the promissory notes at this time.

22

23      **10.       Prevention of Performance:**  A contracting party has an implied duty not to do anything that

24  prevents the other party from performing his obligation.  A party who prevents performance of a contract

25  may not complain of such nonperformance.  Here, the acts and conduct of Morgan Stanley prevented Ryan

26  Hyslop from performing his duties under the promissory notes.  Morgan Stanley terminated Ryan Hyslop's

27  employment, red-flagged the Hyslop Trust accounts, bifurcated two accounts as described on pages two and

28  three above, defamed Ryan Hyslop so that Ryan Hyslop was unable to obtain employment with a large firm,

1  and (based on the unlawful termination of Ryan Hyslop's employment) activated the payment acceleration

2  clauses contained in the promissory notes. As a direct result of these actions, Ryan Hyslop is prevented from

3  performing and paying the remaining amounts due on the promissory notes at this time.

4

5      **11.**    **Failure to Mitigate:**  Morgan Stanley's claim is barred and/or diminished as a result of the

6  failure of Morgan Stanley to exercise reasonable care in mitigating its damages. In fact, Morgan Stanley has

7  actually caused its own damages by interfering with and preventing Ryan Hyslop's ability to pay the notes

8  off. If Morgan Stanley had not unlawfully terminated Ryan Hyslop's employment, the notes would not even

9  have become due and Ryan Hyslop would have continued making regular payments on the notes. Or, if

10  Morgan Stanley had at least not defamed Ryan Hyslop after his termination, Ryan Hyslop would have been

11  able to obtain new employment with a large firm and pay off the notes in September or October 2020.

12  Instead, because Morgan Stanley *did* unlawfully terminate Ryan Hyslop's employment, *did* defame Ryan

13  Hyslop so that he was prevented from obtaining new employment with a large firm, *did* manipulate the

14  Hyslop Trust's accounts, and *did* red-flag Ryan Hyslop's accounts, Ryan Hyslop is currently prevented from

15  being able to pay off the notes. Morgan Stanley has also refused to mitigate damages by refusing to

16  cooperate in allowing Ryan Hyslop to re-finance a portion of his Liquidity Access Line.[4] Morgan Stanley

17  has also refused to mitigate damages in other ways which cannot be discussed herein due to the California

18  Evidence Code.

19

20      **12.**    **Waiver of Conduct:**  Morgan Stanley is barred from any recovery by virtue of the doctrine

21  of waiver, arising from Morgan Stanley's own conduct under the circumstances. Morgan Stanley gave up

22  its right to collect on the promissory notes, or at least its right to activate the payment acceleration clause,

23  when it unlawfully terminated Ryan Hyslop, then manipulated the accounts of the Hyslop Trust.

24  ///

25  ///

26  _____

27      [4]Morgan Stanley is assessing a penalty of $9,162.46 to close out the fixed rate portion of the loan,
which is for $182,195, and Morgan Stanley denied Ryan Hyslop's simple request to move the collateral from

28  the variable rate loan to the fixed rate loan.

13. **Unjust Enrichment:** If Morgan Stanley's improper activation of the acceleration clause is allowed to stand, and Ryan Hyslop is required to pay the entire $1,313,501.97, plus interest, immediately, rather than over the four years he would otherwise have paid it, Morgan Stanley will be unjustly enriched by having the money earlier, allowing Morgan Stanley to earn interest on the money or invest it and make more money.

14. **Offset:** If the panel finds that Ryan Hyslop owes any money to Morgan Stanley, then that amount is easily offset by the amounts of money Morgan Stanley owes Ryan Hyslop for unlawfully terminating him, defaming him, and manipulating and red-flagging the accounts of the Hyslop Trust.

WHEREFORE, Ryan Hyslop prays that Morgan Stanley takes nothing by way of its Arbitration Claim and that Ryan Hyslop recover his costs and reasonable attorneys' fees, pursuant to the terms of the promissory notes and California Civil Code section 1717.

Dated: January 11, 2021          ESKRIDGE LAW

By Gayle L. Eskridge/Janelle L. Menges/Davina Dawson
Attorneys for Respondent RYAN HYSLOP

# EXHIBIT 12

Exhibit 12
Page 89

1  MAURICIO S. BEUGELMANS, Bar No. 201131
   mbeugelmans@mmlawus.com
2  ANYA THEPOT, Bar No. 318430
   athepot@mmlawus.com
3  MURPHY & McGONIGLE, RLLP
   44 Montgomery Street, Suite 3750
4  San Francisco, CA 94104
   Telephone:     (415) 651-5707
5  Fax No.:        (415) 651-5708

6  KATHERINE M. MCGRAIL, *Admitted Pro Hac Vice*
   kmcgrail@mmlawus.com
7  MURPHY & McGONIGLE, P.C.
   4870 Sadler Road, Suite 301
8  Glen Allen, VA 23060
   Telephone:     (804) 762-5370
9  Fax No.:        (804) 762-5366

10 Attorneys for Claimant
   MORGAN STANLEY SMITH BARNEY LLC

11

12             FINRA DISPUTE RESOLUTION SERVICES

13

14 MORGAN STANLEY SMITH BARNEY LLC        FINRA Case No. 20-03924

15 Claimant,                             **MORGAN STANLEY SMITH BARNEY
                                         LLC'S (I) NOTICE OF NOTE**
16 v.                                    **ASSIGNMENT AND (II) MOTION FOR
                                         LEAVE TO AMEND THE**
17 RYAN R. HYSLOP, individually,         **STATEMENT OF CLAIM**

18 Respondent.

19

20         Claimant Morgan Stanley Smith Barney LLC ("MSSB"), by and through its undersigned

21 counsel, hereby provides notice that on February 18, 2021 all of Claimant's promissory notes

22 were assigned to Morgan Stanley Smith Barney Financing LLC ("MSSB FINANCING") and

23 moves, pursuant to FINRA Rule 13309(c), for leave to amend the Statement of Claim by adding

24 MSSB FINANCING as a Claimant.

25         On February 18, 2021, Claimant MSSB assigned all of its promissory notes, including the

26 ones at issue in this arbitration and attached to the Statement of Claim ("Promissory Notes"), to

27 MSSB FINANCING.  A copy of the Assignment is attached hereto as Exhibit A.  As a result of

28 this assignment, MSSB FINANCING is now the Note Holder of the Promissory Notes that are
   the subject of, and attached to, the Statement of Claim.  Assignment of the Promissory Notes to

Exhibit 12
Page 90

                                    1
────────────────────────────────────────────
            MOTION TO AMEND STATEMENT OF CLAIM

1  MSSB FINANCING is consistent with the terms of the Promissory Notes, which state, *inter alia*:

2  "Note Holder retains the right to assign its rights, title and interest in this Note as it may elect.

3  Borrower expressly consents to any such, or any subsequent, assignment by Note Holder or any

4  successor to Note Holder." *See* Statement of Claim, Exhibits A-H.

5     As the new Note Holder of the subject Promissory Notes, MSSB FINANCING is an

6  interested party to these proceedings.  Under the California Commercial Code section 3301, the

7  "Person entitled to enforce" an instrument means, among other things, (a) the holder of the

8  instrument, or (b) a nonholder in possession of the instrument who has the rights of a holder.  *See*

9  *Debrunner v. Deutsche Bank Nat'l Tr. Co.* (2012) 204 Cal. App. 4th 433, 442 (holding that the

10  assignee of the deed of trust was the holder of the promissory note.); *see also In re Lee*, 408 B.R.

11  893, 900 (Bankr. C.D. Cal. 2009) citing Cal. Comm. Code 3301 (under California law, where

12  lender admittedly sold a promissory note to Freddie Mac, Freddie Mac or a subsequent transferee

13  was the owner and real party in interest and could enforce the note.)   Pursuant to the terms of the

14  Assignment, MSSB FINANCING is entitled to all of MSSB's rights, title and interest in and to

15  the Promissory Notes, including the right to collect all sums due thereunder.  *See* Exhibit A, ¶ 2.

16  Accordingly, MSSB FINANCING is entitled to collect all sums due under the Promissory Notes

17  that are the subject of this arbitration, making it a necessary party whose interest is affected by

18  the outcome of this arbitration.

19     A copy of the proposed Amended Statement of Claim is attached as Exhibit B.  You will

20  note that the changes to the Statement of Claim are de minimis and technical in nature and do not

21  impact the substance of the claims.  There will be no resultant prejudice to Respondent due to the

22  addition of MSSB FINANCING as a party.

23     Pursuant to FINRA Rule 13503, MSSB's undersigned counsel has conferred with counsel

24  for Respondent, who has agreed to the relief sought by MSSB.

25

26

27

28

Exhibit 12
Page 91

2

MOTION TO AMEND STATEMENT OF CLAIM

1       For the reasons set for the above, we respectfully request that the Panel grant MSSB's

2  motion for leave to amend the Statement of Claim.

3

4  April 5, 2021                      Respectfully submitted,

5

6                                      _____

7                                MAURICIO S. BEUGELMANS
ANYA N. THEPOT
MURPHY & McGONIGLE, RLLP

8

9                                KATHERINE M. MCGRAIL
MURPHY & McGONIGLE, P.C.

10

11                               Attorneys for Morgan Stanley Smith Barney
LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 12
Page 92

3

MOTION TO AMEND STATEMENT OF CLAIM

# EXHIBIT 13

Exhibit 13
Page 93



April 21, 2021

*VIA SUBMISSION TO FINRA DR PORTAL*

FINRA DISPUTE RESOLUTION SERVICES
Attn:   Maxine Medina

Regarding:   *Morgan Stanley Smith Barney LLC v. Ryan Hyslop*
             FINRA Case No.: 20-03924

Dear Ms. Medina:

I previously contacted you via email regarding this issue, and you instructed me to contact you via the FINRA DR Portal.

As I stated in my email of April 20, 2021, I am counsel for Respondent Ryan Hyslop in the above-referenced matter. An issue has come up which I believe warrants a conference call with the arbitrator. According to a February 18, 2021 letter I received from FINRA Dispute Resolution Services, you are the person in charge of scheduling conference calls, so I am contacting you.

In short, my client has been instructing Morgan Stanley to transfer funds from two specified accounts which are controlled by Morgan Stanley, and pay off three of the promissory notes which are the subject of this case, since April 12, 2021.  The principal due on these three notes is $543,320.56, so this is no small matter. Morgan Stanley's Reno Branch Manager (who is the person who should be handling such a transaction) told Ryan Hyslop only the attorneys could arrange for payment of the three notes.

Therefore, on April 14, 2021, at 12:23 p.m. (which was during trading hours), my office emailed a letter to counsel for Morgan Stanley, instructing  Morgan Stanley to use the Ryan Hyslop and Carly Hyslop 2013 Trust monies from the accounts ending in 6600 and 6605 to pay off Ryan Hyslop's promissory note dated November 26, 2013 and his two promissory notes dated January 2, 2014. Opposing counsel did not reply until Friday, April 16, 2021, at 2:07 p.m. (when I and my co-counsel were both otherwise occupied and not reading emails).  In opposing counsel's email, he wrote:

> If Mr. Hyslop wishes to request a check for the current payoff amount, please
> have him execute and return the enclosed LOA today. Let me know if he will
> not be able to execute and return the LOA today because interest is accruing
> daily and the payoff amount will need to be adjusted to the specific day on
> which Morgan Stanley receives the signed LOA and cuts the check.

First, there is no need for a check to be issued.  The monies can simply be wired from one account to another.  Morgan Stanley takes hundreds of thousands of daily trade orders, and its failure to execute Mr. Hyslop's pay-off instructions on the day the instructions were given is a failure to execute and   violates FINRA rules.  Second, the Letter of Authorization ("LOA") is itself problematic because

21250 Hawthorne Boulevard, Suite 450   ■   Torrance, California 90503
Telephone: 310/303-3951   ■   Facsimile: 310/303-3952   ■   www.eskridgelaw.net

Exhibit 13
Page 94

# ESKRIDGE LAW

the entity "Morgan Stanley Smith Barney LLC," to whom the check is to be payable, does not even own the promissory notes. Morgan Stanley recently filed an Assignment of Promissory Notes, assigning the notes to "Morgan Stanley Smith Barney Financing LLC." Also, I have repeatedly requested a copy of the document assigning the notes from "Morgan Stanley Smith Barney FA Notes Holdings, LLC" to "Morgan Stanley Smith Barney, LLC" but have yet to receive any such document. Mr. Hyslop therefore does not even know what entity the payments should be made to, and expects Morgan Stanley to assure that payment is made to the entity which actually owns the notes. The pay-offs should have taken place on April 14, 2021, when the instruction was given. Therefore, interest after April 14 should not be included in the pay-off amounts.

On April 19, 2021, at 10:25 a.m., my office emailed another letter to opposing counsel, addressing the issues with the LOA, and again instructing that Morgan Stanley pay off the notes. As of right now (April 21, 2021, at 11:31 a.m.), the funds have still not been transferred to pay off the three notes. It has now been over a week since my client initially instructed Morgan Stanley's Reno Branch Manager to use funds from two specified accounts and pay off the first three notes, yet the monies have still not been transferred to pay off the notes. Interest is accruing and my client is being required to pay me to deal with this situation which should not be a "situation" at all. (Transferring money to pay off promissory notes is normally a very routine matter.)

Can you please coordinate a conference call with Mr. Hackett, opposing counsel, and me concerning this issue?

Thank you so much for your attention to this matter.

Sincerely,

Gayle L. Eskridge
Of ESKRIDGE LAW

*Service on other counsel via FINRA DR Portal*

G:\99\20013\FINRA Arb-PromissoryNote\Correspondence\L-MaxineMedina-01.wpd

Exhibit 13
Page 95

# EXHIBIT 14

Exhibit 14
Page 96

MAURICIO S. BEUGELMANS, Bar No. 201131
mbeugelmans@mmlawus.com
ANYA N. THEPOT, Bar No. 318430
athepot@mmlawus.com
MURPHY & MCGONIGLE, RLLP
44 Montgomery Street, Suite 3750
San Francisco, California 94104
Telephone:     415.651.5707
Facsimile:      415.651.5708

KATHERINE M. MCGRAIL, *Admitted Pro Hac Vice*
kmcgrail@mmlawus.com
MURPHY & McGONIGLE, P.C.
4870 Sadler Road, Suite 301
Glen Allen, VA 23060
Telephone:     (804) 762-5370
Fax No.:        (804) 762-5366

Attorneys for Claimant
MORGAN STANLEY SMITH BARNEY LLC

BEFORE

FINRA DISPUTE RESOLUTION, INC.

| | |
|---|---|
| MORGAN STANLEY SMITH BARNEY LLC and MORGAN STANLEY SMITH BARNEY FINANCING LLC, | FINRA Case No.: |
| Claimants, | RULE 13806 AMENDED STATEMENT OF CLAIM |
| v. | |
| RYAN HYSLOP, individually, | |
| Respondent. | |

Morgan Stanley Smith Barney LLC ("MSSB") and Morgan Stanley Smith Barney Financing LLC ("MSSBF") (collectively, "Morgan Stanley," or "Claimants"), through their undersigned counsel, hereby files its Rule 13806 Amended Statement of Claim against former employee, Ryan Hyslop ("Mr. Hyslop" or "Respondent"), CRD Number 5693941.

## I.  PARTIES

1.      Morgan Stanley Smith Barney LLC is a Financial Industry Regulatory Authority, Inc. ("FINRA") member firm with its principal place of business in Purchase, New York.  In this arbitration,

Morgan Stanley seeks an award against Respondent in the outstanding principal amount of $1,313,501.97 along with pre-award interest, post-award interest at the legal rate, and the costs and expenses of this arbitration, including its reasonable attorneys' fees.

2.      Morgan Stanley Smith Barney Financing LLC is a subsidiary of Morgan Stanley Smith Barney LLC.  One of its primary activities is to finance fixed assets for Morgan Stanley Smith Barney LLC's Wealth Management group.  Morgan Stanley Smith Barney Financing LLC is the holder of Respondent's Notes.

3.      Respondent was employed as a Financial Advisor from November 26, 2013, to August 19, 2020, at a Morgan Stanley branch located in Stateline, Nevada.  During his employment with Morgan Stanley, Respondent was an associated person of a member of FINRA.

4.      Respondent is required to submit this matter to arbitration pursuant to: (a) the terms of the written agreements that he executed during his employment, including arbitration clauses contained in the written promissory notes that are the subject of this arbitration, copies of which are attached hereto as **Exhibits A, B, C, D, E, F, G** and **H**; and (b) the rules of FINRA.

## II.  JURISDICTION AND HEARING VENUE

5.      Counsel for Morgan Stanley has properly executed a Uniform Submission Agreement on behalf of Claimant in this matter.  FINRA has jurisdiction to hear and decide this controversy, and Respondent is bound to arbitrate this matter.

6.      On November 26, 2013, Morgan Stanley Smith Barney FA Notes Holdings LLC ("MSSB FA Notes") and Respondent voluntarily entered into a promissory note ("Note A").[1]  On January 2, 2014, MSSB FA Notes and Respondent voluntarily entered into a second promissory Note ("Note B").  On January 2, 2014, MSSB FA Notes and Respondent voluntarily entered into a third promissory Note ("Note C").  On January 28, 2016, MSSB FA Notes and Respondent voluntarily entered into a fourth promissory Note ("Note D").  On January 19, 2017, MSSB FA Notes and Respondent voluntarily

---

[1] On October 22, 2019, Morgan Stanley Smith Barney FA Notes Holdings LLC and Morgan Stanley entered into an assignment agreement whereby MSSB FA Notes sold and transferred all of its right, title and interest in and to the Notes to Morgan Stanley.  On February 19, 2021, Morgan Stanley assigned all of its promissory notes, including the one at issue in this arbitration, to Morgan Stanley Smith Barney Financing LLC.  As a result of this assignment, Morgan Stanley Smith Barney Financing LLC is the holder of Respondent's Notes and a Claimant on this claim.

RULE 13806 AMENDED STATEMENT OF CLAIM

entered into a fifth promissory Note ("Note E").  On January 29, 2018, MSSB FA Notes and Respondent voluntarily entered into a sixth promissory Note ("Note F").  On February 6, 2019, MSSB FA Notes and Respondent voluntarily entered into a seventh promissory Note ("Note G").  On or about February 15, 2019, MSSB FA Notes and Respondent voluntarily entered into a Lending Growth Award Contract Promissory Note & Release ("Note H").  Note H funded on or about March 15, 2019.  Notes A-H are referred to collectively herein as the "Notes."  Pursuant to the Notes, the parties agreed that any controversy or claim arising out of the Notes would be settled by arbitration in accordance with the rules of FINRA.

7.    Morgan Stanley respectfully requests that the hearing in this case be scheduled in Reno, Nevada as it is the hearing location that is closest to the location where the associated person was employed at the time the dispute arose.  Morgan Stanley also requests the arbitration panel selection pursuant to Rule 13806 of the FINRA Code of Arbitration Procedure for Industry Disputes.

### III.  FACTS

8.    Between on or about November 26, 2013 and on or about February 15, 2019, Morgan Stanley loaned Respondent a total of $3,027,828.64.  Morgan Stanley's loans to Respondent were evidenced by eight promissory notes signed by Respondent, as further discussed below.

### Note A

9.    On or about November 26, 2013, MSSB FA Notes loaned Respondent $1,278,200.00.  The loan was evidenced by unambiguous Note A signed by Respondent, a copy of which is attached hereto as **Exhibit A**.[2]

10.    By the terms of Note A, Respondent agreed to repay $1,278,200.00 in nine annual payments of $142,022.22, beginning on November 26, 2014, plus interest at the rate of 1.75% per annum.

---

[2]  Concurrent with the execution of the Notes identified herein, Respondent entered into related Bonus Agreements for Notes A-H (the "Bonus Agreements") with Morgan Stanley, under which Morgan Stanley agreed to pay Respondent bonus payments equivalent to the annual installments to be paid by Respondent under the Notes, plus applicable interest.  However, as set forth in the Bonus Agreements, no payments were to be due and payable unless Respondent continuously remained in the employment of Morgan Stanley through the date the payments became due and payable.  Copies of the Bonus Agreements are attached hereto in **Exhibits A-H** immediately behind the Notes.

RULE 13806 AMENDED STATEMENT OF CLAIM

11.     Note A provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note A become immediately due and payable.

12.     Note A also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note A and any outstanding balance due under Note A would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 5.75% per annum.

13.     Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note A, in the amount of $426,066.72, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $5,439.34.  In addition, interest has been accruing at $66.94 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

**<u>Note B</u>**

14.     On or about January 2, 2014, MSSB FA Notes loaned Respondent $182,600.00.  The loan was evidenced by unambiguous Note B signed by Respondent, a copy of which is attached hereto as **Exhibit B**.

15.     By the terms of Note B, Respondent agreed to repay $182,600.00 in eight annual payments of $22,825.00, beginning on December 30, 2014, plus interest at the rate of 1.75% per annum.

16.     Note B provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note B become immediately due and payable.

17.     Note B also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note B and any outstanding balance due under Note B would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 5.75% per annum.

RULE 13806 AMENDED STATEMENT OF CLAIM

18.     Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note B, in the amount of $45,650.00, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $508.57.  In addition, interest has been accruing at $7.17 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

## Note C

19.     On or about January 2, 2014, MSSB FA Notes loaned Respondent $182,600.00.  The loan was evidenced by unambiguous Note C signed by Respondent, a copy of which is attached hereto as **Exhibit C**.

///

20.     By the terms of Note C, Respondent agreed to repay $182,600.00 in eight annual payments of $22,825.00, beginning on January 2, 2015, plus interest at the rate of 1.75% per annum.

21.     Note C provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note C become immediately due and payable.

22.     Note C also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note C and any outstanding balance due under Note C would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 5.75% per annum.

23.     Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note C, in the amount of $45,650.00, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $502.03.  In addition, interest has been accruing at $7.17 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

RULE 13806 AMENDED STATEMENT OF CLAIM

### Note D

24.    On or about January 28, 2016, MSSB FA Notes loaned Respondent $315,398.51.  The loan was evidenced by unambiguous Note D signed by Respondent, a copy of which is attached hereto as **Exhibit D**.

25.    By the terms of Note D, Respondent agreed to repay $315,398.51 in seven annual payments of $45,056.93, beginning on January 27, 2017, plus interest at the rate of 1.25% per annum.

26.    Note D provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note D become immediately due and payable.

27.    Note D also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note D and any outstanding balance due under Note D would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 5.25% per annum.

28.    Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note D, in the amount of $135,170.79, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $946.38.  In addition, interest has been accruing at $19.39 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

### Note E

29.    On or about January 19, 2017, MSSB FA Notes loaned Respondent $353,761.88.  The loan was evidenced by unambiguous Note E signed by Respondent, a copy of which is attached hereto as **Exhibit E**.

30.    By the terms of Note E, Respondent agreed to repay $353,761.88 in six annual payments of $58,960.31, beginning on January 17, 2018, plus interest at the rate of 2% per annum.

Exhibit 14
Page 102

31.     Note E provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note E become immediately due and payable.

32.     Note E also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note E and any outstanding balance due under Note E would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 6.25% per annum.

33.     Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note E, in the amount of $176,880.95, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $2,078.11.  In addition, interest has been accruing at $29.00 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

### Note F

34.     On or about January 29, 2018, MSSB FA Notes loaned Respondent $459,513.37.  The loan was evidenced by unambiguous Note F signed by Respondent, a copy of which is attached hereto as **Exhibit F**.

35.     By the terms of Note F, Respondent agreed to repay $459,513.37 in five annual payments of $91,902.67, beginning on January 26, 2019, plus interest at the rate of 2.25% per annum.

36.     Note F provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note F become immediately due and payable.

37.     Note F also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note F and any outstanding balance due under Note F would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 6.25% per annum.

Exhibit 14
Page 103

38.     Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note F, in the amount of $275,708.03, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $3,491.55.  In addition, interest has been accruing at $47.08 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

## Note G

39.     On or about February 6, 2019, MSSB FA Notes loaned Respondent $240,826.24.  The loan was evidenced by unambiguous Note G signed by Respondent, a copy of which is attached hereto as **Exhibit G**.

40.     By the terms of Note G, Respondent agreed to repay $240,826.24 in four annual payments of $60,206.56, beginning on February 1, 2020, plus interest at the rate of 2.75% per annum.

41.     Note G provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note G become immediately due and payable.

42.     Note G also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note G and any outstanding balance due under Note G would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 6.75% per annum.

43.     Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note G, in the amount of $180,619.68, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $2,174.23.  In addition, interest has been accruing at $33.31 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

Exhibit 14
Page 104

RULE 13806 AMENDED STATEMENT OF CLAIM

### Note H

44.     On or about February 15, 2019, MSSB FA Notes loaned Respondent $14,928.64.  The loan was evidenced by unambiguous Note H signed by Respondent, a copy of which is attached hereto as **Exhibit H**.  Note H funded on or about March 15, 2019.

45.     By the terms of Note H, Respondent agreed to repay $14,928.64 in five annual payments of $2,985.73, beginning on March 15, 2020, plus interest at the rate per annum equal to the Federal mid-term applicable rate as determined by the Internal Revenue Service for March of 2019 or in the month of disbursement, if later (2.59%).

46.     Note H provides, *inter alia*, that if Respondent's employment terminated, voluntarily or involuntarily for any reason or no reason whatsoever, all amounts outstanding under Note H become immediately due and payable.

47.     Note H also provides, *inter alia*, that if Respondent's employment terminated voluntarily or involuntarily for any reason or no reason whatsoever and Respondent fails to pay all amounts due, Respondent would be deemed to be in Default on Note H and any outstanding balance due under Note H would immediately become due and payable, together with interest accruing from the date of Default at the Interest Rate of 6.59% per annum.

48.     Respondent's Morgan Stanley employment terminated on August 19, 2020.  As a result of Respondent's termination, the outstanding principal balance due under Note H, in the amount of $11,942.91, immediately became due and owing.  As of the date of Respondent's termination, the total interest accrued was $132.69.  In addition, interest has been accruing at $2.15 per day since Respondent's termination, and will continue to accrue until Respondent has repaid the remaining balance of the loan he received from Morgan Stanley.

### Respondent's Failure to Honor his Obligations Under the Notes and Morgan Stanley's Demand for Payment

49.     On August 21, 2020, Morgan Stanley made a written demand upon Respondent for repayment of the amount owed under the Notes.  A demand letter was sent to Respondent's home, a copy of which is attached hereto as **Exhibit I**.  To date, Respondent has refused, and continues to refuse, to honor his obligations under the Notes.

50.     As a result of Respondent's failure to honor his obligations to Morgan Stanley, Morgan Stanley has been forced to commence this action, and to retain counsel to represent it in this action. Accordingly, Morgan Stanley has incurred attorneys' fees and other costs that it would not have incurred had Respondent honored his obligations to Morgan Stanley.  Pursuant to the terms of the Notes, Respondent agreed that he would pay all costs and expenses, including attorneys' fees, incurred or sustained by Morgan Stanley in connection with the enforcement of the Notes.

51.     Morgan Stanley has performed all terms and conditions required of it under the Notes. The amount due and owing to Morgan Stanley is *in excess* of $1,313,501.97 which includes: (a) $1,297,689.08, the principal balance due and owing on the Notes as of March 15, 2020; (b) $15,812.89 the accrued interest due and owing on the Notes as of August 19, 2020; (c) interest on the Notes at $212.21 per day from August 19, 2020, to the date of the award; and (d) all costs of collection, including, but not limited to, attorneys' fees, filing fees and all costs and expenses associated with arbitration.

## IV.  CONCLUSION

WHEREFORE, Morgan Stanley respectfully requests that the Panel enter an award:

(1)     On the Notes, in the outstanding principal amount of $1,297,689.08, plus the total interest due as of Respondent's termination date in the amount of $15,812.89, plus pre-award interest on the Notes of $212.21 per day, from August 19, 2020, to the date of the award, plus post-award interest at the legal rate; and

(2)     For its fees and expenses, including the FINRA filing fee, all FINRA forum fees, and its reasonable attorneys' fees, as provided for by the Notes; and

RULE 13806 AMENDED STATEMENT OF CLAIM

1       (3)     Such other and further relief as the Panel deems appropriate.

2

3  April 5, 2021                        Respectfully submitted,

4

5

6                                  MAURICIO S. BEUGELMANS
                                 ANYA N. THEPOT

7                                  MURPHY & MCGONIGLE, RLLP

8                                  KATHERINE M. MCGRAIL
                                 MURPHY & McGONIGLE, P.C.

9

10                                  Attorneys for Morgan Stanley Smith Barney LLC
                                 and Morgan Stanley Smith Barney Financing LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RULE 13806 AMENDED STATEMENT OF CLAIM